## PANDOLFO v. UNITED STATES.
### No. 2345.

Circuit Court of Appeals, Tenth Circuit.

May 6, 1942.

Rehearing Denied June 16, 1942.

Dissenting Opinion June 24, 1942.

918

Caswell S. Neal, of Carlsbad, N. M. (Reed Holloman, of Santa Fe, N. M., on the brief), for appellant.

Everett M. Grantham and Donald B. Moses, both of Santa Fe, N. M. (A. Gilberto Espinosa, of Albuquerque, N. M., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The defendant, appellant here, was tried on an indictment containing twelve counts, the first eight of which charged a scheme to defraud by use of the mails in violation of 18 U.S.C.A. § 338, and four counts charging violations of the Securities Act, 15 U.S.C.A. 77q (a) (1). He was convicted on each of the eight counts charging a scheme to defraud; the four counts charging a violation of the Securities Act failed, either by verdict of not guilty or by ruling of the court. The defendant was sentenced to a term of five years and $100 fine on each of the eight counts, arranged to impose a total of ten years imprisonment, from which judgment the defendant has appealed.

The eight counts in the indictment on which the defendant was tried, convicted, and sentenced, charge in substance that the defendant devised a scheme and artifice to defraud numerous persons named in the indictment by the sale of stock through false and fraudulent representations and promises, and the use of the mails in execution thereof. Each count of the indictment charged that the defendant organized and incorporated the Old Line Insurance Shares Corporation, with a capital structure of 20,000 shares no par Class A common stock, and 5,000 shares of Class B preferred stock. According to the allegations in the indictment, the scheme as devised contemplated the sale of this stock to so-called investors who were induced by false and fraudulent representations to buy the stock of the company; that defendant represented to the prospective investors that there would be no commissions or cost for the sale of the stock, except the nominal cost of organization. He represented that there were large profits to be made in the consummation of small loans, and that it was his intention to build a strong finance company; that he otherwise represented that the proceeds from the sale of stock would be used for the purpose of reinvestment in the loan

business, which would return a large profit to the stockholders of the Old Line Company, in the form of dividends and increased value of the stock of the company.

In the execution of this scheme, it is alleged that the defendant, by use of the United States mails, delivered to prospective investors, bulletins, reports, financial statements, and other advertising matter, designed to induce, persuade, and entice prospective investors to purchase the stock of the Old Line Company, and that the representations contained in the mail matter were false, fraudulent, and deceptive, in that they misrepresented the prospective earnings of the company, the financial condition of the company, and represented that the company was earning profits when in fact interest upon the investments was paid out of the assets of the company and not from earned profits. It is alleged that the defendant converted the proceeds of the sale of the stock to his own use by purchasing stock in other companies, having little or no market value, and by setting it up on the books of the company as assets at a high and fictitious value, thereby converting to his own use the difference between what he paid for the stock and what he charged the Old Line Company. It is also charged that he converted to his own use the assets of the company created by the sale of stock by taking assets of the company and substituting therefor his personal note, which he carried as part of the assets of the company, thus becoming indebted to the company in the sum of $30,000.

It is also alleged that he purchased, for and on behalf of the Old Line Company, certain property in Albuquerque, New Mexico, known as the War Mothers Memorial Hospital Association, paying $750 in cash and agreeing to pay $29,250 in installments. Immediately thereafter, he liquidated his personal indebtedness to the company in the amount of $30,000 by the expedient of setting up the War Mothers Memorial Hospital Association property on the books of the company at a value of $60,000, and withdrawing his personal note in the sum of $30,000. Other specific acts of misrepresentation and fraud were alleged.

The record supports the allegations contained in each count of the indictment on which the defendant was convicted, but on appeal, defendant complains of errors occurring in the trial of the case which may be summarized as follows: (1) The trial court abused its discretion by unduly restricting the right to cross examine certain government witnesses, and prejudicial remarks of the court made in connection with the ruling thereon; (2) error of the court in permitting a government witness to testify concerning the value of shares of stock in certain insurance companies, purchased by the defendant on behalf of the Old Line Company, and carried as assets of the said company; (3) error of the court in refusing to permit the defendant to testify concerning his knowledge of the history of a certain insurance company, the stock of which he had purchased on behalf of the Old Line Company, and which was carried as a part of the assets of the company at an alleged fictitious value, and (4) refusal of the court to permit the defendant to testify concerning the value of the property known as the War Mothers Memorial Hospital Association.

The first point involves the testimony of a government witness who was an accountant and an employee of the Securities Exchange Commission. This witness had examined the books of the Old Line Company, and had testified in detail concerning its assets and the nature of the transactions which the appellant had conducted on behalf of the company, alleged to be fraudulent.

Under the organizational agreement, it became the duty of the defendant to deliver to the company assets equivalent to the value of the stock when sold. The specific point involved a transaction in which the defendant had exchanged the stock of the Old Line Company, having a book value of $145, for stock in the National Mutual Savings and Loan Association, which he placed on the books of the Old Line Company as an asset worth $210. By this transaction, according to the theory of the government, the defendant unjustly enriched himself in the sum of $65, representing the difference between the Old Line Company stock and the value of the stock which he acquired as an asset of the Old Line Company. The government witness, Ballou, testified that in his opinion the Old Line Company should have received the benefit of the $65 profit shown by the book transaction and not the defendant. Specifically, the defendant complains

that the right of cross examination was unduly restricted when the government witness was asked the following question on cross examination: "All right. Now, if Mr. Pandolfo under his contract was required to turn in assets of the value of the amount of stock he sold, and if he turned in assets in all of that value how was anybody in the company defrauded?" To which the government objected as repetition, whereupon the court stated: "The objection will be sustained. Your question, of course, cannot be answered. The proposition, he formed this corporation, defrauded everybody, they are showing this to the extent that he got back $65.00 and has never accounted for by the books." Counsel for the defendant excepted to the ruling and the remarks of the court, and now contends that the right of cross examination was unduly restricted and the remarks of the court were prejudicial.

■ While detached from other testimony of this witness, and without considering the extent to which the witness was cross examined, and having the full background of the record, it appears that the court in sustaining the objection and making the remarks shown by the record, may have unduly curtailed the right of cross examination, and his remarks tended to unduly prejudice the defendant. But a full consideration of the whole record concerning the testimony of the government witness, Ballou, and the extent to which he was cross examined, clearly shows that substantially the same question had been previously asked by defendant counsel, and answered by the government witness. At the stage of the record where the objection was sustained, the examination of the witness had resolved itself into nothing more than an argument between the government witness and defendant counsel. In addition to its repetitious character, the question by its very nature calls for a conclusion, the answer to which was peculiarly within the province of the jury, and the court committed no error in sustaining the objection.

■ While the remark of the court in connection with his ruling on the objection may, when considered as an expression of the court's opinion, be susceptible of unwarranted inferences as to the effect of the testimony, yet, the record shows that immediately after the objection interposed by defendant's counsel, the court stated quite plainly, "that is a question for the jury when all this testimony is in." In these circumstances, it cannot be presumed that the jury was unduly influenced by the remark of the court.

■ The same government witness had testified in detail concerning certain financial statements which had been mailed to the investors, and which tended to show that certain expenses incident to the sale of the stock had been charged to the Old Line Company, contrary to the representations made by the defendant to the effect that no such expenses would be charged. On cross examination, the witness was asked in effect to state whether money actually paid by the defendant to stock salesmen for selling stock, and other related expenses, should not properly appear on a financial statement, to which the government objected and was by the court sustained. It appears from the record that all transactions relating to the sale of stock by installment contracts were reflected by a card index system which the defendant maintained separate and apart from the affairs of the company. These transactions were not reflected on the books of the company, neither did the defendant consider himself accountable to the company until the purchase price had been paid, in accordance with the installment contracts, and the stock issued. Evidently, the purpose of this cross examination was to prove by the witness, as a principal of accounting, that money paid by the defendant to stock salesmen for the sale of stock and other related expenses, should be charged as an expense of the corporation, and so reflected in the financial statement. Again, the question called for an answer which clearly invaded the province of the jury, and one which the jury should ultimately decide in the determination of the guilt of the defendant. The direct issue was whether the defendant had accounted to the corporation for monies he had received in conducting the affairs of the corporation. From the whole record, it appears that these facts were clearly and fairly presented to the jury and we are unable to say that the ruling of the court at this point constituted prejudicial error.

Next, the defendant complains of the admission of testimony of a government witness named Fisher, who operated a quotation service by which he circularized offers to buy and sell stock and securities which were not listed on any exchange. The quotation service was patronized by

approximately seventeen hundred subscribers who were interested in the purchase and sale of unlisted securities. It was not the purpose of the quotation service to consummate any sales, but merely to circularize the offers to buy and sell among its subscribers. The witness was permitted to testify concerning the quoted "bid" and "asked" price of certain shares of stock in different insurance companies which defendant had purchased for and on behalf of the Old Line Company, and which had been placed on the books of the company as an asset at a price much greater than the quoted price. The defendant complains that the offers to buy and sell this stock, without more, is entirely insufficient to establish value, and since there was no testimony by this witness that any of the offers to buy and sell actually resulted in a sale, the testimony is incompetent to show value.

Under the allegations of the indictment, the actual value of the stock became quite material because, it is contended by the government, that the defendant purchased stock at a much lower figure than that which he charged the company, and at which it was placed on the books as an asset. It may be conceded, as a general proposition, that a mere quotation of offers to buy or sell is not a proper criterion of value unless it is also shown that a sale results therefrom, or unless the quotation results in a sale in the regular course of business. See Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211; Clarke et al. v. Hot Springs Electric Light & Power Company et al., 10 Cir., 55 F.2d 612; Wiget v. Becker, 8 Cir., 84 F.2d 706; Cf. Coplin v. United States, 9 Cir., 88 F.2d 652, 669; Com. of Virginia v. State of West Virginia, 238 U.S. 202, 35 S.Ct. 795, 59 L.Ed. 1272. It may be conceded that the isolated quotations of bids by brokers to buy or sell the stock of the insurance companies involved here are entirely too uncertain, shadowy, and speculative, to form any sound foundation for the determination of value.

If this were the only testimony tending to show the highly fictitious value of the assets of the company, as represented by the defendant in his financial report to the investors, we would be constrained to consider more seriously the question of its probative value, but in each instance there is direct evidence of purchases made by the defendant of the stock in question

and the prices he paid therefor. His testimony shows that he was familiar with the stock and its value. This is of course irrefutable evidence, not only of the value of the stock, but the value which the defendant himself placed upon it. The record shows a wide and unexplained variance between the price defendant paid for the stock of the various insurance companies, and the price which he placed upon it when transferred to the books of the company as an asset.

These transactions, within themselves, amply support the allegations in the indictment concerning the false and fictitious value of the assets of the company as represented by the defendant. The testimony complained of, although of doubtful value, is not prejudicial when considered in connection with the defendant's transactions involving the purchase and sale of the stock in question.

Similarly, the defendant contends that the court erroneously admitted the testimony of a government witness, C. E. Hyer, secretary of the Occidental Life Insurance Company, who testified concerning the sale of a block of stock of this company at a price much less than that which it was carried on the books of the Old Line Company as an asset. In connection with the admission of this evidence, it is urged that this block of stock was sold by the owner while under financial stress, and that a distress sale does not truly represent the value of stock. Again, it may be conceded that a distress sale of stock under the attendant circumstances is not a proper criterion of value, and insufficient standing alone to support the allegations of fraud as alleged. But again, the defendant is met by his own testimony concerning the value of the stock. He testified that he bought 1,000 shares of Occidental stock for $1.40 per share, or a total of $1,400, and that he placed this stock on the books of the company and represented it as a $4,000 asset. He also purchased other shares of stock in the same company at $1.67½ per share and placed it on the books of the company at $4.00 per share. The record shows that the block of stock in question was finally sold at $1.85 per share, and in comparison does not indicate such a discrepancy as to justify prejudicial error by its admission.

The defendant also complains of the refusal of the court to permit the defendant, while a witness in his own behalf,

to testify concerning the history of the Gibralter Colorado Life Insurance Company, the stock of which the appellant had purchased at $15 and $25 per share, and placed it on the books of the Old Line Company as an asset at $125 per share. It appears from the record that the defendant sought to justify the value he had placed on the stock by his experience in buying and selling the stock, and to support its financial stability by showing that the Gibralter Colorado Life Insurance Company had a blue-sky permit to sell its stock in approximately twenty states, and other facts which obviously had no direct relevancy to the question of value. It is significant to note that here, as in each case submitted, concerning the value of stock in insurance companies, the appellant purchased the stock at a price far less than the amount which he charged the company, and at which it was placed on the books of the company as an asset. In every case there is definite evidence of a purchase by him of the stock, which is certainly a criterion of value, and a definite and fictitious write-up on the books which, within itself, definitely establishes a fictitious value wholly disproportionate to the actual value of the stock. The witness was permitted to testify in detail concerning his operations of the company, his good faith in the integrity of each transaction, and his honest belief in the veracity of each statement made in connection therewith. The court's instructions in relation to his good faith and honest intentions were clear and fair.

Finally, the defendant complains that the trial court erred in refusing to permit the defendant as a witness to testify concerning his estimate of the value of the property designated as the War Mothers Memorial Hospital Association. The record shows that this property was originally purchased by the War Mothers Memorial Hospital Association for a hospital site. The venture did not mature and the defendant agreed to purchase the property from a state court receiver for $30,000; he paid $750 in cash and agreed to pay the balance in installments. Immediately thereafter, he placed the property on the books of the Old Line Company as a $60,000 asset. Simultaneously he withdrew his personal note for $30,000 carried as an asset on the books of the company, and by this transaction sought to and did cancel his indebtedness to the company by the amount of his note. He testified that he had instructed two of his employees to appraise the property at a conservative figure, and that they had appraised it at $60,000. The record shows that the appellant was permitted to testify concerning the purchase price and his estimated value of the property. His employees who had appraised the property were permitted to testify in detail concerning their appraisement.

From the whole record, it is manifest that the defendant organized the Old Line Company for the primary purpose of selling stock; he induced prominent citizens throughout the State of New Mexico to purchase stock in the company and to become advisory directors and officials of the company. But the defendant was the sole managing officer; the advisory directors and officials were but decoys for his plan of action. He represented that large profits were to be made by engaging in the small loan business, and from time to time he represented to the investors that the company could loan more money than available funds would permit, when in fact, he was the principal borrower in the loan department and his personal note in the sum of $30,000 was one of the principal assets of the company.

The trial was long and tedious, much testimony was adduced. When considered in their proper setting, and in the light of the whole record, the errors complained of do not affect the substantial rights of the defendant, or deny to him a fair and impartial trial. It must be remembered that law suits are not tried in accordance with mathematical or scientific formulas; they are often lacking in that degree of exactitude which characterizes the ideal. In the administration of justice, we can only hope to attain perfection.

We conclude that from the whole record, the court did not commit prejudicial error, either in the exclusion of testimony offered by the defendant, or the admission of testimony introduced by the government over the objection of the defendant, and that the judgment of the lower court is affirmed.

PHILLIPS, Circuit Judge (dissenting).

It is my opinion that the testimony of the witness Fisher was incompetent and that we cannot say on this record that it was not prejudicial. See Coulston v. United States, 10 Cir., 51 F.2d 178, 182. It is my conclu-

sion, therefore, that the petition for rehearing should be granted, and that the judgment should be reversed with instructions to grant the appellant a new trial.