No. 51,629

EQUITY INVESTORS, INC., a corporation, *Appellee, Cross-Appellant,*
v. ACADEMY INSURANCE GROUP, INC., a corporation, *Appellant,*
*Cross-Appellee.*

(625 P.2d 466)

Opinion filed March 25, 1981.

*Emmett A. Blaes,* of Jochems, Sargent & Blaes, P.A., of Wichita, argued the cause and *Gary M. Austerman* and *Alan D. Herman,* of the same firm, were with him on the brief for the appellee.

*Robert Martin,* of Martin, Pringle, Fair, Davis & Oliver, of Wichita, argued the cause and *Paul B. Swartz* and *James A. Walker,* of the same firm, were with him on the brief for the appellant.

The opinion of the court was delivered by

HERD, J.: Academy Insurance Group, Inc., appeals from a judgment in favor of Equity Investors, Inc., in the amount of $384,463 plus interest at eight per cent from March 2, 1978, for breach of contract.

None of the facts are in dispute except those pertaining to damages. Equity Investors, Inc., a New Mexico corporation, owned two motels, a nursing home, a liquor license, some unimproved real estate and miscellaneous personal property. Victor E. Katt was its president, chairman of the board and controlling stockholder. Academy's predecessor, known as Liberty Investors, Inc., was a Kansas holding company.

On July 16, 1971, Equity agreed to transfer all its assets and liabilities to Liberty in exchange for 501,200 shares of Liberty's stock. The stock was to be placed in a ten-year voting trust with Liberty appointing a majority of the trustees. Equity could sell no more than one per cent of the stock each year and the pledging of the stock was restricted.

The facts and circumstances surrounding the breach of contract are set forth in detail in *Equity Investors, Inc. v. Ammest Group, Inc.,* 1 Kan. App. 2d 276, 563 P.2d 531, *rev. denied* 223 Kan. clxxi

(1977), by the Court of Appeals. The court determined there was a valid contract between the parties and that contract had been breached by Liberty. The case was returned to the trial court for a determination of the damages.

The trial court found Liberty's net worth was $492,637. This figure was arrived at by evidence of the appraised value of the properties and Katt's testimony of liabilities together with the exhibits to the contract. The trial court accepted the values most favorable to Equity. The figure is not contested.

The trial court first computed Liberty's value by using "book value" of the corporation which, simply stated, reflects the sum of plaintiff's and defendant's stockholder equities divided by the number of shares which would have been outstanding after the issuance of the 501,200 shares to Equity. The trial court rejected the evidence of fair market value of Liberty's stock on the theory it was uncertain and irrelevant. Judgment was rendered to Equity for $805,471 on November 9, 1978. Liberty moved to alter and amend the judgment, maintaining the evidence of fair market value of Liberty's stock was relevant, material and proper, and the use of "book value" improper. On July 6, 1979, the trial court sustained defendant's motion and reduced the judgment to $384,463 plus interest at eight per cent from March 2, 1978. Liberty appealed and Equity cross-appealed from the judgment.

Appellant Liberty contends the court erred in failing to determine the fair market value of the precise block of shares to be transferred to appellee pursuant to the contract.

Equity is entitled to recover the amount the corporation would have received had the contract been performed, less the assets Equity retained which were to have been tendered pursuant to the terms of the contract. 5 Corbin on Contracts § 992 (2d ed. 1964); 22 Am. Jur. 2d, Damages § 47, p. 74-75. Equity retained property worth $492,637. The trial court then had the task of determining the value of 501,200 shares of common stock in Liberty on the date of breach, September 2, 1971, and computing the difference between the two.

Since the net asset value of Equity is not contested, we are left with one remaining task. We must determine if there is any substantial competent evidence to support the trial court's judgment valuing Liberty's stock at $1.75 per share. *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 77, 596

P.2d 816 (1979); *Crowley v. O'Neil,* 4 Kan. App. 2d 491, 498, 609 P.2d 198, *rev. denied* 228 Kan. 806 (1980).

Appellant argues the trial court is compelled to follow a two-step process in valuing the shares to be transferred to Equity. The first step, according to appellant, was properly completed by computing the fair market value for freely traded over-the-counter stock as the mean price between bid and asked prices on the valuation date. The second step, appellant argues, is to determine the effect on market value of the issuance of 501,200 additional shares with a restriction. The trial court found the evidence with regard to a blockage was too indefinite to consider, stating in its amended findings and conclusions filed July 6, 1979:

"The court is disregarding, as too indefinite, the amount of the discount.

. . . . .

"The Court, in re-examining its position, finds that with the evidence between bid and ask from the testimony and discarding the discount testimony as too indefinite and resorting to the mean of bid and ask market price for the common stock of Liberty Investors, establishes the value at $1.75 a share and enters judgment in the amount of $384,463.00 in favor of the Plaintiff and against the Defendant."

We agree there is insufficient evidence to support the computation of a blockage discount. Regarding the stock valuation, Equity argues it was error to use the bid and ask quotation as any evidence of market value. It cites *Pandolfo v. United States,* 128 F.2d 917 (10th Cir. 1942); *Kramer v. Ayer,* 317 F. Supp. 254 (S.D. N.Y. 1970); *Opper v. Hancock Securities Corporation,* 250 F. Supp. 668 (S.D. N.Y. 1966); *Fistel v. Christman,* 135 F. Supp. 830 (S.D. N.Y. 1955). All of the cited cases cast adverse reflections on the credibility of bid and ask quotes in relation to market value of stock.

It is well established that where the value of corporate stock must be ascertained if there is no ascertainable market value, actual value may be determined by valuing the corporate assets and dividends paid. Also, the nature and permanency of the corporate business and control of the stock, may be taken into consideration in arriving at the stock's fair market value. *Walker v. Fleming Motor Co.,* 195 Kan. 328, 332-333, 404 P.2d 929 (1965); *Hotchkiss v. Fischer,* 139 Kan. 333, 337, 31 P.2d 37 (1934). Equity then concludes Liberty's stock value per share was $2.59 on the date of breach and that Equity should recover $805,471, the original judgment of the trial court.

We have carefully studied the pleadings, transcripts and exhibits in this case. In addition, we have calculated stock values by all of the suggested methods as well as other methods arrived at by our own research. We have attempted to apply all of the variety of ingredients for determining stock values where no market exists for the stock. We note that Liberty's earnings for the five months ending May 31, 1971 showed a loss of $17,278. Obviously the management of Liberty lacked something to be desired. When Liberty entered into the contract with Equity, the book value of the company would not reflect that type of loss.

Examining the cases where market value was not used, we find in virtually every instance the stock involved was in a close corporation where there was no quoted price of .any kind. In this case, however, there is evidence in the record of bid and ask prices of the questioned stock on the date of breach. The schedules were stipulated into the record. Only a limited number of shares of the new issue (one per cent per year) would be available for sale, and the quotes accurately reflect what a market maintenance broker would pay for a limited number of shares. We conclude the trial court's use of bid and ask quotes to arrive at market value was based on substantial competent evidence and that finding should be affirmed.

The final issue is whether the trial court erred in granting prejudgment interest on Equity's unliquidated claim. The trial court awarded interest at eight per cent (8%) from March 2, 1978, the date the trial court took the damage issue under advisement. The court rendered an amended judgment on October 5, 1979. The date of breach of contract is September 2, 1971. The statute governing prejudgment interest in effect at the time interest was awarded was K.S.A. 16-201.

Equity contends since Academy argues the market value of the stock is computed from fixed bid and ask prices, the claim is liquidated and prejudgment interest should be awarded from the date of the breach of contract.

"A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same become definitely ascertainable by mathematical computation. Where an amount is due upon contract, either expressed or implied, and there is no uncertainty as to the amount which is due or the date on which it becomes due, the creditor is entitled to recover interest from the due date." *First National Bank v. Bankers Dispatch Corporation,* 221 Kan. 528, 537, 562 P.2d 32 (1977).

See *Burke v. Aid Ins. Co.,* 487 F. Supp. 831, 837 (D. Kan. 1980);

*Westamerica Securities, Inc. v. Cornelius,* 214 Kan. 301, Syl. ¶ 9, 520 P.2d 1262 (1974); *Barbara Oil Co. v. Patrick Petroleum Co.,* 1 Kan. App. 2d 437, 444, 566 P.2d 389, *rev. denied* 222 Kan. 749 (1977).

Equity's reliance on *Phelps Dodge Copper Products Corp. v. Alpha Construction Co.,* 203 Kan. 591, 455 P.2d 555 (1969), to support its claim of liquidation is misplaced. In *Phelps,* a portion of the claim was held to be liquidated because the parties had contractually agreed on the price and terms of payment. The amount due was undisputed. In this case, the value of the stock is the primary subject of dispute. The trial court was requested to consider various methods of arriving at that value: bid and ask quotes to determine market value; computation of a blockage discount; and establishment of a book value on the stock. While we will agree the bid and ask quotes themselves are not the subject of dispute, the *use* of those quotes is highly controverted. In the face of such disagreement regarding valuation of the stock upon which the eventual judgment will rely, it cannot be said that the claim was a fixed amount known and bargained for by the parties. The claim was unliquidated and Equity must fall within an exception to the rule in order to receive prejudgment interest.

Prejudgment interest was allowed on unliquidated claims in *Shutts, Executor v. Phillips Petroleum Co.,* 222 Kan. 527, 567 P.2d 1292 (1977), *cert. denied* 434 U.S. 1068 (1978), and *Lightcap v. Mobil Oil Corporation,* 221 Kan. 448, 562 P.2d 1, *cert. denied* 434 U.S. 876 (1977), in order to fully compensate royalty owners whose suspense royalties had been retained and used by oil companies. In *Henderson v. Hassur,* 225 Kan. 678, 594 P.2d 650 (1979), an unfaithful agent wrongfully retained sums owed to a principal and the court, recognizing equitable principles enunciated in *Lightcap,* awarded prejudgment interest on a liquidated claim. The facts of the case at bar do not comport with the situations discussed in *Shutts, Lightcap* and *Henderson.* This case does not involve a party's retention of money rightfully belonging to another. We have also examined *Seaman U.S.D. 345 v. Casson Constr. Co.,* 3 Kan. App. 2d 289, 594 P.2d 241 (1979) and *Schaefer & Associates v. Schirmer,* 3 Kan. App. 2d 114, 590 P.2d 1087 (1979), and find them unpersuasive authority. We find prejudgment interest is not applicable under the facts of this case.

The judgment of the trial court is affirmed in part and reversed in part.