**Jacqueline Sue Snyder SCHWARTZ, Plaintiff-Appellant, Cross-Appellee,**

**v.**

**John D. SLAWTER and Homestead Minerals Corporation, Defendants-Appellees, Cross-Appellants.**

**Nos. 83–2238, 83–2275.**

United States Court of Appeals, Tenth Circuit.

Dec. 21, 1984.

---

318

Before DOYLE, McKAY and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

The present appeal is by Jacqueline Sue Snyder Schwartz and is taken from a judgment of the district court which found that defendants, Homestead Minerals Corporation and John Slawter, did not tortiously interfere with the contractual relationship existing between Schwartz and an escrow agent. The escrow agent allegedly refused to deliver to Schwartz 270,000 shares of Homestead stock held for her former husband, now deceased, pursuant to a June 30, 1973 agreement. Additionally, defendants Slawter and Homestead cross appeal the district court's prior summary judgment in favor of Schwartz. This found Schwartz entitled to ownership and delivery of the 270,000 Homestead shares.

A brief statement of the case is very important to the outcome of the case and will thus be set forth as follows.

This case arises out of Schwartz's efforts to claim 270,000 of the 540,000 shares of Homestead stock held by an escrow agent for Schwartz's former but now deceased husband. Schwartz was divorced from William Snyder in 1974; he later remarried a Doris Snyder in 1975 and died in 1976. Doris Snyder, as administrator of William Snyder's estate and cross-claimant, claims entitlement to the other 270,000 shares of Homestead stock.

The total 540,000 shares of the stock had been deposited with the escrow agent pursuant to a tax-free exchange of common stock as part of a corporate reorganization. The Reorganization and Related Escrow Agreement was executed June 30, 1973 and provided for the exchange of the common stock of Casa de Cascade, Inc. for stock of Homestead. Slawter and William Snyder were parties to the agreement and Snyder was to receive 540,000 shares of Home-

stead common stock for 1,000 shares of his Casa de Cascade stock.

The Escrow Agreement instructed the escrow agent to retain all stock certificates pending receipt of numerous financial statements from the parties. Upon such receipt, the escrow agent was empowered to deliver to the parties certificates of ownership in Homestead stock for Casa de Cascade stock. Further, if the foregoing financial statements were not received by the escrow agent by December 31, 1973, the Escrow Agreement automatically terminated and the escrow agent was instructed to return the Casa de Cascade shares to its shareholders and the Homestead shares to Homestead.

The requisite financial statements were received by the escrow agent on or before December 7, 1973. However, on January 15, 1974, the escrow agent received both a telephone call and a letter from Slawter which contained an instruction "not to deliver the said Homestead shares to Mr. Snyder and to hold said shares in your possession pending further written instruction." This is why the escrow agent did not deliver to Snyder certificates of ownership of the Homestead shares and, instead, retained them until the time of this action.

Schwartz was divorced from Snyder in March 1975 and was awarded a one-half interest in the Homestead shares as part of the Ohio court ordered divorce agreement. Snyder died in 1976 and Homestead allegedly placed a stop order on the certificates of ownership still held in escrow. Following repeated attempts to take delivery of the Homestead shares Schwartz finally filed this suit in September 1979 against Slawter and Homestead in the United States District Court for the Northern District of Ohio. Doris Snyder was the administrator of Snyder's estate and as such was added as a party by amended complaint. The action was transferred to the United States District Court for the District of Colorado.

Schwartz requested the district court (1) to grant a declaratory judgment establishing her entitlement, as successor of her husband and pursuant to the Ohio divorce order, to 270,000 shares of the Homestead stock held in escrow, and (2) to award compensatory and punitive damages for defendants' tortious interference with her right under the June 30, 1973 Escrow Agreement to receive delivery of the shares from the escrow agent. Defendants countered *inter alia* that William Snyder, and Schwartz as successor in interest, were not entitled to any of the 540,000 shares of Homestead stock. This was based on the fact that Snyder failed to adhere to a prior February 8, 1973 agreement with Slawter which required him to continue employment with a predecessor company for ten years as a condition to receipt of the Homestead shares.

On August 20, 1982, the district court ruled in favor of plaintiff Schwartz and cross-claimant Doris Snyder on their motions for partial summary judgment. He found that each was entitled to ownership of 270,000 shares of the Homestead stock which was held in escrow. The court refused to admit defendants' testimony of the alleged February 8, 1973 agreement. He held that it was barred both as a prior agreement contradicting the terms of the fully integrated final Escrow Agreement of June 30, 1973, and as testimony in violation of the Colorado Dead Man's Statute, 6 Col. Rev.Stat. § 13–90–102 (1973). Consequently, having found William Snyder satisfied the terms of the Escrow Agreement on or before December 7, 1973, the court ordered the transfer of the Homestead shares to plaintiff Schwartz and cross-claimant Doris Snyder.

Schwartz's additional claims for compensatory and punitive damages were tried to the district court in June 1983. In August, a memorandum order and opinion of the court resulted in the entry of a judgment against Schwartz as far as the referred to compensatory and punitive damages were concerned. The court found that there was a failure by Schwartz to prove that defendants' conduct constituted either tortious interference with the June 1973 escrow

agreement or conversion of the Homestead shares.

A further holding of the court was, in the alternative, that even if defendants' conduct was tortious, Schwartz failed to prove damages with the requisite reasonable certainty. As a consequence, punitive damages were also denied. In any event the judgment referred to is the one which the plaintiff-appellant Schwartz now seeks to establish. In addition, defendants cross appeal the district court's earlier August 1982 order of partial summary judgment in favor of Schwartz and Doris Snyder.

The issues raised in the case are first, whether the district court erred in granting partial summary judgment, finding Schwartz and Doris Snyder entitled to the Homestead shares which were held in escrow. And, secondly, whether the district court erred in finding either that defendants' conduct did not constitute tortious interference with the escrow agreement or that no damages were proved.

We now consider the first issue mentioned above. Defendants maintain that the district court erred in ruling that both the parol evidence rule and the Colorado Dead Man's Statute barred testimony of an alleged February 8, 1973 letter agreement. Defendants argue that the February letter agreement evidences additional preconditions on William Snyder's right to receive the Homestead shares later held in escrow pursuant to an Escrow Agreement dated June 1973.

In reviewing the order of partial summary judgment, this court must consider whether the record reveals a genuine issue of material fact pertinent to the ruling and whether the substantive law was correctly applied. *See Western Casualty & Surety Company v. National Union Fire Insurance Company*, 677 F.2d 789, 791 (10th Cir.1982). Defendants contend that disputed facts were present below and that the law was incorrectly applied by the district court. We disagree.

■ The ruling of the district court was that defendants' testimony of the existence of the February 1973 contract was barred by the parol evidence rule because it would alter the unambiguous terms of the later fully integrated June 1973 Escrow Agreement. The substantive law was correctly applied by the district court. Paragraph 18 of the June 1973 Escrow Agreement stated:

18. ENTIRE AGREEMENT AND AMENDMENTS. This Agreement contains the entire understanding of the parties hereto with respect to the subject matter herein contained. There are no restrictions, promises, warranties, covenants or undertakings other than those expressly set forth herein.

Accordingly, evidence of the alleged prior February 1973 agreement is barred by the parol evidence rule unless the prior agreement is not inconsistent with the later fully integrated contract *and* (a) is made for a separate consideration, or (b) is such an agreement as might naturally be made as a separate agreement. *See Stevens v. Vail Associates, Inc.*, 28 Colo.App. 344, 472 P.2d 729 (1970). The district court was correct in holding that by imposing additional conditions to William Snyder's entitlement to the Homestead shares, the February 1973 agreement contradicted the unambiguous terms of the June 1973 Escrow Agreement. In the absence of admissible testimony on the existence of the February 1973 agreement, no genuine dispute exists on Schwartz's and Doris Snyder's entitlement to the Homestead shares. Consequently, the district court's grant of partial summary judgment in favor of Schwartz and Doris Snyder must be affirmed and this court need not address the applicability of the Colorado Dead Man's Statute.

■ The next issue which we consider is whether the court erred in finding that Schwartz failed to prove damages with the requisite reasonable certainty.

In ruling against plaintiff Schwartz on her claims for compensatory and punitive damages, the district court after trial ruled that plaintiff failed both to prove that defendants' conduct constituted tortious interference with Schwartz's right to receive

the Homestead shares and, alternatively, that even if such tortious interference were proved, plaintiff failed to prove damages with the requisite reasonable certainty. The district court's ruling as to the proof of damages was not clearly erroneous; hence this court need not address the issue of whether the essential elements of tortious interference with plaintiff's contractual rights was established. *See Comtrol, Inc. v. Mountain States Telephone and Telegraph Company,* 32 Colo.App. 384, 513 P.2d 1082, 1084 (1973) (specifying the elements necessary to prove a claim of tortious interference under Colorado law); *also* Restatement (Second) of Torts, § 766 (American Law Institute 1977).

The district court rejected plaintiff Schwartz's attempt to prove damages from the non-delivery of the Homestead shares by introducing "bid" and "asked" prices for the shares during various times from April to August 1981. The Homestead shares were restricted or "lettered" stock prohibited from sale or transfer for two years after the November 6, 1973 issuance date. In addition, the stock is not traded on a national exchange but, instead, is traded on the over-the-counter market. As a consequence, it proved difficult both to ascertain a loss in value from non-delivery of the shares to Schwartz and to show damages from Schwartz's resultant inability to sell the shares at a higher price than they can presently command.

Schwartz attempted to prove this loss in value by introducing stock quotation sheets, called "pink sheets," showing the average "bids" and "asked" prices for the Homestead shares during the months when the stock was trading in volumes of 270,000 shares or more. The "pink sheets" did not show prices of actual sales but, instead, merely recorded isolated quotations to buy or sell. The district court held that such evidence when considered in the context of further testimony on the low volume and light trading of the Homestead shares was simply too speculative to support an award of damages. This court agrees.

In *Pandolfo v. United States,* 128 F.2d 917, 921 (10th Cir.1942), this court stated that quotations of "bids" and "asked" prices for stocks in "pink sheets" were generally considered "too uncertain, shadowy, and speculative, to form any sound foundation for the determination of value" in a prosecution for violation of a mail fraud statute. In that case this court did not definitively decide the probative value of "pink sheets", because there was direct evidence of actual sales of the stock in question and the prices actually paid. *Id.,* at 921.

Here plaintiff relies solely on the "pink sheets" for evidence of value during the months the Homestead stock was traded in volumes high enough to sustain the sale of 270,000 shares. Plaintiff cites decisions, including *Equity Investors, Inc. v. Academy Insurance Group, Inc.,* 229 Kan. 456, 625 P.2d 466 (Kan.1981). This case shows the courts' willingness to accept "pink sheet" quotations in order to prove stock value. However, in *Equity Investors,* the Supreme Court of Kansas held that because only a limited number of shares of the stock would be available to sale at one time, the quotations in the "pink sheets" accurately reflected what a market-maker would pay for such limited number of shares. *Id.* 625 P.2d at 468. Conversely, the evidence in the instant case indicates that the quotations in the "pink sheets" did not accurately reflect the effect on the market price of an offering for sale of a large block of 270,000 shares of a lightly traded stock. Thus, this court cannot say that the district court erred by concluding that the evidence as a whole, even when viewed in the light most favorable to plaintiff, was simply too speculative to support an award of compensatory damages. Also, the district court did not err in concluding that an award of punitive damages was not supported by the evidence.

The judgment of the district court should be affirmed.