[Cite as *Reed v. Triton Servs., Inc.*, 2014-Ohio-3185.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| GRADY D. REED II, | : | |
| | | CASE NOS. CA2013-07-055 |
| Appellee/Cross-Appellant, | : | CA2013-07-060 |
| | : | O P I N I O N |
| - vs - | | 7/21/2014 |
| | : | |
| TRITON SERVICES, INC., et al., | : | |
| Appellants/Cross-Appellees. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2010-CVH-2293

Robert H. Welch II, Christopher S. Cushman, 1019 Main Street, Milford, Ohio 45150, for appellee/cross-appellant

Scott R. Thomas, Matthew T. Cheeks, 250 Grandview Drive, Suite 500, Ft. Mitchell, KY 41017, for appellants/cross-appellees, Triton Services, Inc., Majid Samarghandi, Richard T. Schock, Hamid Samarghandi and Robert Stindt

**RINGLAND, P.J.**

{¶ 1} Defendants-appellants/cross-appellees, Triton Services, Inc. ("Triton"), and Majid Samarghandi, Hamid Samarghandi, Richard Schock and Robert Stint (the "Individual Appellants") appeal a directed verdict granted in favor of plaintiff-appellee/cross-appellant, Grady Reed.

{¶ 2} Reed and the Individual Appellants were shareholders of Triton. Each of them

signed and were subject to Triton's Stockholders' Agreement (the "Agreement"). Paragraph 5 of the Agreement is titled "Required Sales and Purchases of Stock Owned by Stockholders." Pursuant to that provision, the parties agreed that each stockholder shall sell all of his stock in Triton upon termination of his employment for any reason. In such an instance, Triton is first given the option to purchase the stock. If Triton does not exercise that option, the Individual Appellants are required to purchase the stock within 120 days, proportional to the current stock ownership between the nonselling stockholders. Paragraph 6 of the Agreement then sets forth the formula by which the purchase price of the stocks is to be determined.

{¶ 3} Reed claims that he owns ten shares of Triton, while appellants claim that he owns only five. That conflict stems from a prior agreement between Reed and Triton wherein Triton agreed to purchase five of his shares. Reed alleges that Triton was in the process of purchasing the shares, but had not yet completed the purchase as the parties never agreed to a price. Appellants argue that a price was agreed upon and that Triton had paid $90,000 towards the purchase of those shares, but that Reed refused to accept the final payment under that agreement.

{¶ 4} Reed submitted a notice of termination of employment to Triton effective December 18, 2009. Following that resignation, he continued work for Triton as an independent contractor. Triton terminated its relationship with Reed entirely in April 2010. Reed asserts that the stock repurchase provision of the Agreement was triggered upon his resignation, and that appellants have breached the Agreement by failing to purchase his shares.

{¶ 5} Following a trial on the breach of contract, Reed moved for a directed verdict on shares 6-10, or the shares which were not subject to the prior agreement between Reed and Triton. Appellants moved for a directed verdict as to all of the shares, separately moving for

- 2 -

a directed verdict on shares 1-5 which they alleged had previously been sold to Triton in 2009. The trial court overruled appellants' motions and granted a directed verdict in favor of Reed on all 10 shares. The $90,000 Triton had paid towards shares 1-5 was applied against the judgment.[1]

{¶ 6} Appellants now appeal that decision, and Reed cross-appeals. For ease of discussion, we will discuss those assignments of error out of order.

{¶ 7} Assignment of Error No. 3:

{¶ 8} THE TRIAL COURT ERRED IN DENYING APPELLANTS' MOTION FOR MISTRIAL AND OTHERWISE DENIED APPELLANTS A FAIR TRIAL BY PREVENTING THEM FROM ASSERTING EQUITABLE DEFENSES

{¶ 9} Within this assignment of error, appellants argue that, "[a] trial court errs in denying a motion for mistrial when its order a week before trial advises [appellants] that they will be barred from presenting evidence in support of their equitable defenses because trial would be confined to [Reed's] claim for 'money damages,' and, after all evidence is in, grants [Reed's] request for the equitable remedy of specific performance."

{¶ 10} Appellants argue that Reed claimed his action was one for money damages, but that what he truly sought, and what the trial court subsequently ordered, was specific performance of the contract. Therefore, we must consider what remedies were available, sought and ordered.

**I. Remedies**

{¶ 11} In a breach of contract action, a money damages claim is one which seeks to compensate a party for the loss suffered as a result of a breach of contract. On the other

---

1. As stated above, Triton had the option to purchase Reed's shares, but was under no obligation to do so pursuant to the Agreement. However, based upon the resolution of this appeal, we do not address the appropriateness of offsetting a portion of the judgment with the $90,000 previously paid by Triton.

hand, a specific performance claim is one which, in essence, seeks to eliminate the breach itself by requiring the parties to expressly adhere to the terms and conditions of the contract. However, the remedy of specific performance is only available when no other remedies are available at law.

{¶ 12} The trial court agreed with Reed that money damages were available and therefore specific performance was not. Accordingly, the trial court denied appellants the opportunity to present equitable defenses that may have been available in an action for specific performance. Appellants argued that specific performance was the only available remedy and that Reed merely couched a claim for specific performance under the guise of a money damages claim.

{¶ 13} Both Reed and the trial court relied on *Taylor v. Brown* for the proposition that, "[w]here a specific amount is claimed and no accounting is requested or required and no other equitable relief is sought or needed to get full and adequate relief, the action is legal, not equitable." *Taylor v. Brown*, 92 Ohio St. 287 (1915), syllabus. However, in *Taylor*, the only equitable relief sought was for rescission of the contract due to fraud. The *Taylor* Court found that the contract was already repudiated and informally rescinded prior to the time of the suit. Therefore, no equitable relief was necessary in order for the parties to obtain full and adequate relief. In the present case, Reed has neither repudiated nor informally rescinded the contract, but instead seeks to have that contract expressly enforced. As discussed above, seeking to have the contract expressly enforced is the very definition of specific performance.

{¶ 14} In addition, the *Taylor* Court stated that "if the plaintiff has tendered and made full restitution to the defendant, who is thereby placed in status quo, no rescission is necessary[.]" *Id.* The plaintiffs in that case had "disclaimed all interest therein by bringing the action, and by tendering back to Taylor the deeds for their respective interests which he

- 4 -

had theretofore tendered to them." *Id*. at 295. Finally, the *Taylor* court found that "[p]laintiffs have nothing in their hands which requires restitution * * *." *Id*. at 298. Those facts differ from the present case, wherein Reed did not tender the shares to appellants prior to bringing the action for damages, and thus he has something "in his hands" which requires restitution.

{¶ 15} In defense of his assertion that the action is one for money damages, Reed argues that his loss suffered as a result of the breach is the contract price. However, we find that "[i]n cases of executory contracts for the purchase or sale of personal property ordinarily the proper measure of damages is the difference between the contract price and the market price of the goods at the time when the contract is broken." *W. Union Tel. Co. v. Hall*, 124 U.S. 444, 456, 8 S.Ct. 577 (1888).

{¶ 16} Dealing specifically with stocks, Ohio courts have previously held that the measure of damages for breach of a contract to purchase stock in a company is "the amount which the contract price was in excess of the market value of the stock at the time of this breach, if the stock then had a value less than the agreed contract price." *Davis Laundry & Cleaning Co. v. Whitmore*, 34 Ohio C.D. 229 (1912). The Eighth Appellate District also held that "the proper measure of damages in the instant cause is the difference between the contract price * * * and the market value of the * * * shares of stock * * * on the date of the breach plus interest." *Gall v. Schreick*, 8th Dist. Cuyahoga No. 37249, 1978 WL 217927 (May 18, 1978), *7.

{¶ 17} In *Worrell v. Multipress, Inc.*, 45 Ohio St.3d 241, 245 (1989), the Ohio Supreme Court considered the determination of the value of shares in a closely-held corporation. In that case, an employee had been orally promised an ownership stake in the company, but was later denied that ownership. He sought damages related to the value of the ownership stake he was denied. The Court in *Worrell* held that:

> [t]he stock of a closely held corporation that is not listed on an exchange and has no public market may be valued by what a willing buyer "'would pay to a willing seller who was not acting under compulsion.'" (Citation omitted.) *Bowers Steel, Inc. v. DeBrooke*, supra, at 373; see, also, *Equity Investors, Inc. v. Academy Insurance Group, Inc.* (1981), 229 Kan. 456, 625 P.2d 466, for an alternate method of valuation.

*Id.* at 245. In the *Worrell* case, evidence was introduced as to the value of the business, and damages were awarded accordingly.[2]

**{¶ 18}** In another instance, the Ohio Supreme Court has recognized that the value of stocks in closely-held corporations may have "'no readily discernable [sic] market value, as distinguished from stock in corporations listed on a recognized stock exchange.'" *Endres Floral Co. v. Endres*, 72 Ohio St.3d 526, 530 (1995), quoting 6A Fletcher, Cyclopedia of the Law of Private Corporations, Section 2858, at 486-488 (1987). As a result, "[w]here stock transfers are the subject of a breach, a decree of specific performance may particularly be appropriate." *Barton v. Aydin*, 8th Dist. Cuyahoga No. 43453, 1981 WL 4642, *9 (Nov. 25, 1981).

**{¶ 19}** Taking the above cases into consideration, we find the rule in Ohio to be that if the value of a corporation is readily ascertainable and the shares have been tendered, money damages may be awarded based on the difference between the contract price and the fair market value of the shares. That is to say, the loss suffered. However, if the value of the corporation is not readily ascertainable, such that damages cannot be adequately measured to compensate the nonbreaching party, specific performance of the contract may be required.

---

2. It should be noted that specific performance was not required or requested in that case as the stock was never transferred to the plaintiff and he did not seek to take said ownership. That differs from the present case where Reed has possession and ownership of the stock and seeks to sell it for the contract price.

**{¶ 20}** In the present case, while Reed claims he was seeking only money damages, it is clear that what he really sought was specific performance. He was indeed asking for money, but he was asking for it through the specific performance of Paragraphs 5 and 6 of the Agreement. If he were seeking money damages, he would be required to tender the shares and show the difference between the contract price under Paragraph 6, and the fair market value of the shares. That would be his loss suffered. As it stands, he is not seeking to recover any loss suffered, but rather to require strict adherence to the provisions of the contract. Such is the definition of specific performance.

**{¶ 21}** Reed contends that he is necessarily required to turn over his shares after money damages were awarded in his favor. However, until such time that he did so voluntarily or was forced to by court order following an action by appellants, Reed would clearly be unjustly enriched. "A party whose contract has been breached is not entitled to more than he would have been entitled to had the contract not been breached." *Schreick*, 1978 WL 217927 at *7. Following the decision by the trial court, Reed was awarded the contract price outlined in Paragraph 6 of the Agreement while retaining ownership of the shares. Awarding Reed money damages while allowing him to retain his shares creates an untenable result, ignores the principles of judicial efficiency and further illustrates the necessity of specific performance under these facts.[3]

### II. Contract Provision

**{¶ 22}** Regardless of the above analysis, the Agreement itself provides that specific performance is the only means of remedy in the event of a breach. Paragraph 11 of the Agreement provides as follows:

---

3. While it may not be the case before us, such a practice would undoubtedly lead to instances where the party who was awarded money damages would simply refuse to hand over the property afterwards as he was not ordered to do so, thus requiring another suit to be filed in order to recover the property.

## 11. Equitable Remedies.

The parties hereto declare that it is impossible to measure in money the damages which accrue to a party hereto or to the estate or personal representative of a decedent, by reason of a failure to perform any of the obligations of this Agreement. Therefore, if any party hereto or the personal representative of a decedent shall institute any action or proceeding to enforce the provisions hereof, any other party against whom such action or proceeding is brought shall have no right to make the claim or defense therein, that such party or such personal representative has an adequate remedy at law. The parties further agree that the shares of Stock are unique chattels and that the equitable remedy of specific performance shall be available to enforce the terms of this Agreement.

At oral argument, Reed contended that the phrase, "specific performance shall be available," did not limit the parties to specific performance alone. However, reading the provision as a whole, it appears that it does in fact limit the parties to equitable remedies alone. There are only two types of remedy that would ordinarily be available in a breach of contract action such as the present case: those at law and those in equity.[4] The first sentence of the provision, "[t]he parties hereto declare that it is impossible to measure in money the damages which accrue * * * by reason of a failure to perform any of the obligations of this Agreement," rules out any remedies at law. Therefore the last sentence providing that specific performance is available must be interpreted as exclusive, rather than inclusive. To interpret it otherwise would render the first sentence meaningless.

### III. Conclusion

{¶ 23} In light of the foregoing, we find that the only remedy available was one for specific performance. While Reed alleged he was seeking money damages and thus led the trial court astray, his claim was actually one for specific performance. Furthermore, the Agreement itself required that remedies in equity alone be available in the event of a breach.

---

4. Declaratory relief clearly does not apply in the present case.

Accordingly, we find that the trial court erred in treating the action as one for money damages rather than specific performance, and thus denying appellants the opportunity to present equitable defenses.[5]  Appellants' third assignment of error is sustained.

{¶ 24} Assignment of Error No. 1:

{¶ 25} THE TRIAL COURT ERRED IN DENYING APPELLANTS' MOTION FOR DIRECTED VERDICT.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT ERRED IN ALLOWING REED TO RETAIN $90,000 PAID BY TRITON SERVICES DESPITE THE JUDGMENT IN FAVOR OF TRITON SERVICES.

{¶ 28} Assignment of Error No. 4:

{¶ 29} THE TRIAL COURT ERRED BY REJECTING, AND EXCLUDING EVIDENCE OF, CONTRACTUAL DEFENSES.

{¶ 30} Assignment of Error No. 5:

{¶ 31} THE TRIAL COURT ERRED BY REJECTING AND EXCLUDING IMPEACHMENT EVIDENCE.

{¶ 32} Assignment of Error No. 6:

{¶ 33} THE TRIAL COURT ERRED IN GRANTING A DIRECTED VERDICT TO REED.

{¶ 34} Cross-Assignment of Error No. 1:

{¶ 35} THE TRIAL COURT ERRED BY FAILING TO AWARD PREJUDGMENT INTEREST IN A CONTRACT ACTION.

{¶ 36} The remaining assignments of error involve matters that transpired after the occurrence of the reversible error we acknowledged under the third assignment of error.

---

5. We note that this holding in no way reflects upon the merits or availability otherwise of appellant's equitable defenses.

- 9 -

Accordingly, the remaining assignments of error and the cross-assignment of error are rendered moot.

{¶ 37} Judgment reversed and the cause is remanded for further proceedings consistent with this opinion.

PIPER and M. POWELL, JJ., concur.