OPINION
{¶ 1} Defendant-appellant, Rent-A-Center, Inc. ("RAC"), appeals the decision of the Butler County Court of Common Pleas denying its motion to dismiss and to compel arbitration.
 {¶ 2} On July 3, 2006, plaintiffs-appellees, Michael Roe, Maya Echeverria, and Yorbi Mallen, filed a complaint in the common pleas court against RAC and Kevin Fox, a manager of RAC, alleging assault by Fox, and negligence, wrongful discharge, and other discrimination-related claims. Appellees' claims arose from their employment with and *Page 2 
termination by RAC. On August 3, 2006, RAC moved to dismiss the complaint or, in the alternative, stay the judicial proceedings, and to compel arbitration pursuant to arbitration agreements signed by appellees. The arbitration agreements required any employment and/or termination disputes to be submitted to arbitration. Appellees opposed the motion on the ground that the arbitration agreements were procedurally and substantively unconscionable, and therefore unenforceable. On August 28, 2007, the common pleas court denied the motion on the ground that the arbitration agreements were void and unenforceable in their entirety. RAC appeals, raising one assignment of error:
 {¶ 3} "THE TRIAL COURT ERRED BY DENYING [RAC'S] MOTION TO DISMISS OR STAY THE PROCEEDINGS AND COMPEL ARBITRATION."
 {¶ 4} RAC argues that the common pleas court erred in dismissing its motion because the arbitration agreements signed by appellees were neither procedurally nor substantively unconscionable. Because the determination of whether an arbitration agreement is unconscionable involves a question of law, we apply a de novo standard of review, but any factual findings of the lower court must be accorded appropriate deference. Taylor Bldg. Corp. of Am. v. Benfield, 117 Ohio St.3d 352,2008-Ohio-938, ¶ 2.
 {¶ 5} In Ohio, arbitration agreements are "valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." Taylor at ¶ 32. Unconscionability is a ground for revocation of a contract, and is generally recognized to include both an absence of meaningful choice on the part of one of the parties to the contract, combined with contract terms that are unreasonably favorable to the other party. Id. at ¶ 32-33. The party asserting that an arbitration agreement is unconscionable must show that the agreement is both procedurally and substantively unconscionable. Id. at ¶ 33.
 {¶ 6} Procedural unconscionability concerns the circumstances surrounding the formation of the agreement and occurs when no voluntary meeting of the minds was *Page 3 
possible. Porpora v. Gatliff Building Co., 160 Ohio App.3d 150,2004-Ohio-829, ¶ 7. Procedural unconscionability requires courts to consider factors related to the bargaining power of each party, including age, education, intelligence, business acumen, experience in similar transactions, whether the terms were explained to the weaker party, who drafted the contract, whether alterations in the printed terms were possible, and whether the party claiming unconscionability was represented by counsel at the time the contract was executed.Taylor, 117 Ohio St.3d 352, ¶ 43; Eagle v. Fred Martin Motor Co.,157 Ohio App.3d 150, 2004-Ohio-829, ¶ 31.
 {¶ 7} Additionally, where there are strong indications that the contract at issue is an adhesion contract, there is "considerable doubt that any true agreement ever existed to submit disputes to arbitration." See Williams v. Aetna Fin. Co., 83 Ohio St.3d 464, 473, 1998-Ohio-294. An adhesion contract is defined as "a standardized form contract prepared by one party, and offered to the weaker party, usually a consumer, who has no realistic choice as to the contract terms."Taylor, 117 Ohio St.3d 352, ¶ 48, citing Black's Law Dictionary (8th Ed. 2004), 342. The determination of whether a contract is adhesive in nature falls under the procedural unconscionability prong. See, e.g.,Bayes v. Merle's Metro Builders/Blvd. Constr, L.L.C., Lake App. No. 2007-L-067, 2007-Ohio-7125; Tomovich v. USA Waterproofing FoundationServs., Inc., Lorain App. No. 07CA009150, 2007-Ohio-6214.
 {¶ 8} Substantive unconscionability refers to the actual terms of the agreement. Porpora, 2004-Ohio-829 at ¶ 22. Contract terms are substantively unconscionable if they are unfair and commercially unreasonable. Dorsey v. Contemporary Obstetrics Gynecology,Inc. (1996), 113 Ohio App.3d 75, 80. "Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been developed for this category of unconscionability. However, courts examining whether a particular * * * clause is substantively unconscionable *Page 4 
have considered the following factors: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability."Collins v. Click Camera Video, Inc. (1993), 86 Ohio App.3d 826, 834.
 {¶ 9} To determine whether an arbitration agreement (or a provision of the agreement) is unconscionable, courts must examine the particular facts and circumstances surrounding the agreement. Porpora at ¶ 9. A court must find both procedural and substantive unconscionability in order to invalidate an arbitration agreement. Peltz v. Moyer, Belmont App. No. 06 BE 11, 2007-Ohio-4998, ¶ 44.
 {¶ 10} Upon thoroughly reviewing the common pleas court's decision, we reverse it on the grounds that the common pleas court, notwithstanding RAC's assertion to the contrary, failed to determine whether the arbitration agreements were substantively unconscionable; does not clearly support its determination that the agreements were procedurally unconscionable or adhesion contracts with findings of facts; and essentially only provides a lengthy but merely conclusory determination that the arbitration agreements were unenforceable in their entirety. Throughout the decision, the common pleas court cites applicable legal principles regarding the unconscionability of arbitration agreements, refers to appellees' testimony regarding the circumstances surrounding their signing of the arbitration agreements, refers to a few provisions included in the arbitration agreements, but never clearly ties the facts of this case with its determination that the arbitration agreements were procedurally unconscionable and/or adhesion contracts.
 {¶ 11} Upon reviewing the decision, we find that the following is the portion of the decision addressing whether the arbitration agreements were procedurally unconscionable:
 {¶ 12} "There as [in this court's decision in Taylor Bldg. Corp. ofAm. v. Benfield, 168 Ohio App.3d 517, 2006-Ohio-4428], the parties were not represented by counsel and this is another factor that tends to demonstrate procedural unconscionability. Here as there, this *Page 5 
was a written agreement presented to the plaintiffs as a preprinted form contract prepared by the defendants, with many clauses that were not subject to negotiation.
 {¶ 13} "During the evidentiary hearing plaintiff's [sic] presented evidence that the contract was presented to them on a `take it or leave it' basis. The plaintiffs were not asked to read the contract nor were they asked whether they had any questions.
 {¶ 14} "As pointed out in Taylor v. Benfield, supra, the unconscionability of the arbitration clause and other terms of the contract demonstrate the complete lack of meaningful choice and ability to negotiate on prospective employees part in entering into the agreement.
 {¶ 15} "The distinctive feature of an adhesion contract is that the weaker party has no realistic choice as to its terms. In the casesub judice the immediate supervisor told them to sign it or you don't get the job and to hurry up so you could start to work."
 {¶ 16} The common pleas court then went on to discuss public policy (which is addressed below) before concluding that "[u]nfairness permeates this contract to the extent that the Court finds that it is void and unenforceable in its entirety." In light of the foregoing, we find that the common pleas court's decision is not sufficiently detailed for this court to determine whether the common pleas court properly found the arbitration agreements to be procedurally unconscionable.
 {¶ 17} As noted earlier, substantive unconscionability refers to the actual terms of the agreement, and not the formation of the agreement.Porpora 2004-Ohio-829 at ¶ 22. RAC asserts that the common pleas court found the arbitration agreements to be substantively unconscionable based on the common pleas court's reference to "public policy." We disagree.
 {¶ 18} In its decision and amidst its discussion about adhesion contracts, the common pleas court stated the following about public policy: *Page 6 
 {¶ 19} "The presumption in favor of arbitration should be substantially weaker when there are strong indications that the contract at issue is an adhesion contract and that the arbitration clause itself appears to be adhesive in nature. Here the contract required that all issues regarding sexual harassment, racial discrimination and harassment and assault had to be subjected to arbitration which clearly flies in the face of the public policy of the United States.
 {¶ 20} "The Court is called upon to determine whether the contract entered into between the parties was one of adhesion and, separately whether the contract was unconscionable. A standardized contract form offered to employees or consumers of goods and services on an essentially `take it or leave it' basis without affording realistic opportunity to bargain and under such conditions that an employee or consumer cannot obtain the job, product or services except by acquiescing in the form contract may be an adhesion contract.
 {¶ 21} "When there are strong indications that the contract at issue is an adhesion contract, and here, the arbitration clause itself appears to be adhesive in nature, there is considerable doubt that any true agreement ever existed to submit disputes to arbitration.
 {¶ 22} "Here you had two people who were Hispanic and Spanish was their native language, and the contract was not explained to them nor were they given a chance to ask questions about the contract.
 {¶ 23} "The facts of this case indicate that the contract was not an arms-length agreement. In regard to this contract, `the Emperor is wearing no clothes.'
 {¶ 24} "It would appear that here RAC is indirectly accomplishing that which a clear and distinct enactment of legislative authority says `shall not be done.' There is a general rule that you are not to do indirectly what you are prohibited from doing directly. When an agreement is tainted with illegality, and if it really accomplishes that which the law prohibits, it cannot be sustained. A court of justice cannot be made a hand maiden of an illegality, either *Page 7 
directly or by aid of its own instrumentalities, or by sanctioning and giving affect those agreed upon by the parties. See Samuel Jenifer v.Hamilton Co. (Comrs.) Ohio Superior 1858 Superior Court of Cincinnati, 13 Ohio (DEC. reprint 116).
 {¶ 25} "Public policy is the community common sense and common conscience extended and applied through the state to matters of public morals, health, safety, and welfare. Snyder v. Ridge Hill MemorialPark (1938), 61 Ohio App. 271. For a contract to be against public policy, there must be some harm to a right of the public or some harm to the welfare of the public in general. Ohio has a strong history of concern for workplace safety.
 {¶ 26} "Unfairness permeates this contract to the extent that the Court finds that it is void and unenforceable in its entirety. The plaintiffs did not contract away issues of workplace safety."
 {¶ 27} Contrary to RAC's argument, we find that the common pleas court never addressed the substantive unconscionability prong, and thus, failed to determine whether the arbitration agreements were substantively unconscionable. First, the public policy comments are intermingled with legal principles regarding adhesion contracts (whether citations are provided). As noted earlier, the issue of whether an agreement is adhesive in nature is addressed in conjunction with the procedural unconscionability prong, not the substantive unconscionability prong. In this case, the common pleas court did not specifically state how the general public policy principles it cited relate in any way to the substantive unconscionability prong.
 {¶ 28} Further, although the court briefly (and earlier in its decision) referred to some provisions included in the arbitration agreements, (to wit, a clause providing which claims are covered by the agreements; an "exclusive authority" clause giving an arbitrator the exclusive power to decide whether the arbitration agreements are enforceable; and clauses governing the arbitrator's hourly rates, and the parties' filing fees, attorney fees, and costs), the court *Page 8 
never tied those provisions to its discussion about public policy. Nor did the common pleas court analyze and determine whether and how those particular provisions or any other provisions in the arbitration agreements were unfair and commercially unreasonable, as required under the substantive unconscionability prong.
 {¶ 29} We therefore reverse the common pleas court's decision finding the arbitration agreements to be unenforceable and denying RAC's motion to compel arbitration. We remand the matter with instruction to the lower court to explicitly determine whether the agreements were substantively unconscionable; to specifically analyze whether, which, and how provisions in the agreements were unfair and commercially unreasonable under the substantive unconscionability prong; and to support any determination regarding the unconscionability of the agreements with specific findings of facts.
 {¶ 30} In reversing and remanding the common pleas court's decision, we note that on appeal, RAC cited two federal decisions, in which RAC was the defendant, in support of its argument that the arbitration agreements were not unconscionable, and were therefore enforceable. The record shows that these decisions were not submitted to the common pleas court below. The issue in both cases was whether RAC should be granted a motion to dismiss and to compel arbitration based upon an arbitration agreement identical to the arbitration agreements at issue here. SeeTaylor v. Rent-A-Center (N.D.Ohio 2007), 2007 WL 2301149, andGonzales v. Rent-A-Center (N.D.Ohio 2005), 2005 WL 1353883. See, also,Bragg v. Rent-A-Center (N.D.Ohio 2008), 2008 WL 183315.
 {¶ 31} In light of the foregoing, RAC's assignment of error is sustained.
 {¶ 32} Judgment reversed and remanded for further proceedings consistent with this opinion and in accordance with the laws of this state.
 WALSH, P.J. and BRESSLER, J., concur. *Page 1