[Cite as *Nordloh v. McGuire*, 2015-Ohio-4529.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| LISA S. NORDLOH, INTERIM TRUSTEE OF THE CLARA M. AND HUGH D. HOLBROCK FAMILY TRUSTS, et al. | : | |
| | : | CASE NO. CA2015-02-023 |
| Plaintiffs-Appellees, | : | O P I N I O N 11/2/2015 |
| - vs - | : | |
| GEORGE MCGUIRE, SUCCESSOR TRUSTEE, | : | |
| | : | |
| Defendant-Appellant. | : | |
| | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2013-04-0995

Lindhorst & Dreidame, James F. Brockman, 312 Walnut Street, Suite 3100, Cincinnati, Ohio 45202, for plaintiffs-appellees, Lisa S. Nordloh and John Sheley

Fred S. Miller, Baden & Jones Bldg., 246 High Street, Hamilton, Ohio 45011, for defendant-appellant

**PIPER, P.J.**

{¶ 1} Defendant-appellant, George McGuire, appeals a decision of the Butler County Court of Common Pleas ordering judgment in favor of plaintiffs-appellees, Lisa Nordloh and John Sheley.

{¶ 2} Nordloh and Sheley are beneficiaries of the Clara M. Holbrock Family Trust and

the Hugh D. Holbrock Family Trust, both of which have another living beneficiary. The trusts were managed by McGuire, and the trusts contained approximately $2,000,000 when McGuire began to act as trustee. McGuire had a 15 percent interest in the residuary of the trusts, which would vest upon the death of the living beneficiary.

{¶ 3} Nordloh and Sheley asked McGuire to provide copies of documents related to the trust, and filed suit when he refused to provide the documentation. Nordloh and Sheley alleged that McGuire failed to provide a copy of each trust agreement, reports regarding property within the trusts, receipts and disbursements, the trusts' assets/market shares, and the amount of the trustee's compensation.

{¶ 4} McGuire obtained counsel and filed an answer. The trial court ordered McGuire to produce certain documents, which McGuire provided in part, and the parties engaged in discovery. During the discovery period, Nordloh and Sheley deposed McGuire, and McGuire exercised his Fifth Amendment right against self-incrimination in response to many of the questions. Even so, McGuire's counsel acknowledged in a letter to plaintiffs' counsel that McGuire had misappropriated approximately $400,000 in funds belonging to the trusts.

{¶ 5} Approximately one year after the suit began, Nordloh and Sheley received leave of court to amend their complaint to add both trusts as parties to the suit. The court also appointed an interim trustee to replace McGuire as trustee for both trusts. Within the amended complaint, Nordloh and Sheley alleged that McGuire had misappropriated funds from the trusts and that McGuire breached his fiduciary duties as trustee. Nordloh and Sheley sought damages and disgorgement of any profits McGuire obtained through his misuse of funds. In response to the amended complaint, McGuire's attorney withdrew from the case, citing the dramatic changes to the allegations. The trial court held a withdrawal hearing, and gave McGuire additional time to secure new counsel before moving forward on the amended complaint. However, McGuire did not obtain counsel.

{¶ 6} Instead, McGuire filed a pro se answer to the amended complaint. Within days of the answer, Nordloh and Sheley moved for summary judgment. Approximately a month later, a magistrate held oral arguments regarding the motion for summary judgment. McGuire proceeded at the hearing pro se, and asked during the hearing for a continuance to obtain counsel. The magistrate denied the request, and the hearing occurred.

{¶ 7} The magistrate found that summary judgment was proper, and recommended judgment in favor of Nordloh, Sheley, and the trusts for $910,240 in misappropriated funds, $18,190.52 in attorney fees, and $250,000 in punitive damages. McGuire obtained counsel and filed objections to the magistrate's decision. In overruling the objections, the trial court incorporated the magistrate's decision as an order of the court, and adopted the magistrate's decision in full. McGuire now appeals the trial court's decision, raising the following assignments of error.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DID NOT ALLOW HIM SUFFICIENT TIME TO RETAIN COUNSEL.

{¶ 10} McGuire argues in his first assignment of error that the trial court erred in denying his request for a continuance.

{¶ 11} The decision to grant or deny a continuance is within the sound discretion of the trial court. *State v. Unger*, 67 Ohio St.2d 65, 66 (1981). The trial court's decision regarding a request for continuance will not be reversed absent an abuse of discretion. *Id.* "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 12} In ruling upon a motion for a continuance, "the trial court balances the court's interest in controlling its docket and the public's interest in an efficient judicial system with the

possibility of prejudice to the defendant." *U.S. Bank v. Fitzgerrel*, 12th Dist. Clermont No. CA2011-09-063, 2012-Ohio-4522, ¶ 18. The trial court may consider factors such as the length of the delay requested, prior requests for continuances, the inconvenience to the parties, witnesses, counsel, and the court, whether the movant contributed to the circumstances giving rise to the request for a continuance, and other relevant factors depending on the facts of the case. *Id.*

{¶ 13} The record indicates that the trial court did not abuse its discretion by denying McGuire's request for a continuance. Regarding the convenience of the parties and court, the record is clear that McGuire's counsel withdrew approximately a month before the summary judgment hearing occurred, and that the trial court gave McGuire time to procure new counsel before the hearing. McGuire did not obtain counsel during the month after his counsel withdrew, and instead, decided to proceed pro se until the day of the hearing.

{¶ 14} At the hearing, McGuire asked for a continuance to secure counsel, which was very inconvenient for Nordloh and Sheley and the court, who were all ready to proceed with the hearing that day. The court noted that the litigation had been ongoing for an extended amount of time, and that the plaintiffs were entitled to present their case. Specifically, the court noted that it had been "very, very patient" and had given McGuire "more than enough time to get an attorney." Given the pending inconvenience of continuing the case, the court declined McGuire's request and decided to "deal with [the motion for summary judgment] today" as scheduled.

{¶ 15} Furthermore, McGuire's request for a continuance did not include a specific time frame for how long it would take him to procure counsel. At the hearing, McGuire indicated to the court that he could not afford counsel, but that he was in the process of selling property to obtain the necessary funds. McGuire represented that closing on the property would occur on June 24, approximately seven weeks after the hearing date.

However, there is no indication in the record that the property was guaranteed to close, or even if the property did close, that McGuire would use the funds to secure counsel. In fact, McGuire stated to the court, "it's going to cost $20,000 for me to move forward. I *may* have that in June." (Emphasis added.) McGuire could not guarantee that he would have the money he needed to obtain counsel, and instead only spoke of possibilities. The indefinite nature of McGuire's request failed to establish a specific timeframe for a continuance, as there was never any indication given that counsel would be secured or the case would move forward on any definite date.

{¶ 16} Moreover, we would also note that McGuire contributed to the circumstances giving rise to his request for a continuance. McGuire argued at the hearing that he had obtained counsel once, but that counsel withdrew. The record indicates that the reason for withdrawal of McGuire's counsel was the change in the allegations from the original complaint, namely, the failure to produce documents, to the allegations in the amended complaint that McGuire had misappropriated funds and breached his fiduciary duties. These allegations in the amended complaint arose after McGuire's misappropriation came to light, and because of the change in the allegations, McGuire's attorney requested to withdraw. However, the changing allegations were predicated upon McGuire's own misappropriation of funds and his own breach of fiduciary duties, which had nothing to do with Nordloh and Sheley's actions. McGuire further alleged that he was not in a financial position to obtain new counsel, which again, had nothing to do with Nordloh and Sheley. As such, McGuire was the main contributor to the circumstances giving rise to his request for a continuance.

{¶ 17} After reviewing the record, we find that the trial court did not abuse its discretion in denying McGuire's request for a continuance because the factors noted above weigh heavily in favor of the trial court's decision to deny the continuance. As such, McGuire's first assignment of error is overruled.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT GRANTED PUNITIVE DAMAGES TO THE PLAINTIFFS.

{¶ 20} McGuire argues in his second assignment of error that the trial court erred in granting punitive damages as part of the summary judgment award because the court did not provide any explanation for the award amount, the amount was excessive, and the court failed to consider his individual net worth.

{¶ 21} As noted by the Ohio Supreme Court, the United States Supreme Court has recognized that the Due Process Clause of the Fourteenth Amendment imposes a limit on the size of a punitive damage award. *Barnes v. Univ. Hosps. of Cleveland*, 119 Ohio St.3d 173, 180, 2008-Ohio-3344, ¶ 31. "An award of punitive damages violates due process when it can be categorized as 'grossly excessive' in relation to the state's legitimate interests in punishing unlawful conduct and deterring its repetition." *Id.*

{¶ 22} In *Barnes*, the Ohio Supreme Court adopted the federal test for addressing the constitutionality of a punitive damage award. *Id.* When reviewing an award of punitive damages, an appellate court must analyze three factors: "(1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the harm or potential harm suffered by the plaintiff and the punitive-damages award, and (3) the difference between the award and the civil penalties authorized or imposed in comparable cases." *Id.* at ¶ 32.

{¶ 23} According to R.C. 2315.21(D)(2)(b), when a punitive damages award is assessed against an individual, "the court shall not enter judgment for punitive or exemplary damages in excess of the lesser of two times the amount of the compensatory damages awarded to the plaintiff from the defendant or ten percent of the employer's or individual's net worth when the tort was committed * * *."

{¶ 24} We are unable to analyze the appropriateness of the amount of punitive

damages awarded in this case. The trial court offered no reasoning, explanation, or analysis as to why it was awarding $250,000 in punitive damages. While the court clearly found that McGuire's behavior was "willful and wanton," the record is void of any explanation as to the amount, and how it was determined.

{¶ 25} During the hearing, and after the court determined that summary judgment in favor of Nordloh and Sheley was proper, the court accepted an entry prepared by plaintiffs' attorney regarding the amount of compensatory damages and attorney fees. However, the court directed counsel to leave the amount for punitive damages "open" until it could reach a decision and "have a little bit of time to stop and think about things."

{¶ 26} Despite its reflection upon the amount of punitive damages, the trial court did not indicate in any manner what factors it considered, nor did it give any indication that the punitive damage award comported with R.C. 2315.21(D)(2)(b)'s requirement that the amount could not exceed *the lesser* of two times the compensatory damages or ten percent of McGuire's net worth.

{¶ 27} Although not expressing how it determined $250,000 was the amount of punitive damages to be awarded, the record is clear that the trial court engaged in some degree of fact-finding or weighing of the evidence before it determined the amount. This was not proper given that the summary judgment motion filed by Nordloh and Sheley was specific to McGuire's fraud and breach of fiduciary duties. *See Kennedy v. Jacobs*, 8th Dist. Cuyahoga No. 98285, 2012-Ohio-4604, ¶ 7 ("punitive damages are based on the conduct of the tortfeasor, so the amount of punitive damages to be awarded are necessarily subject to fact-finding. Such fact-finding would be beyond the scope of a motion for summary judgment"). Neither the motion filed by Nordloh and Sheley, nor the evidence submitted in support of the motion for summary judgment presented the trial court with the pertinent information necessary to support a specific amount of punitive damages.

{¶ 28} For example, the record indicates that Nordloh and Sheley moved the court for $500,000 in punitive damages in their motion for summary judgment. By virtue of awarding $250,000 in punitive damages, the trial court somehow decided that the evidence presented through the summary judgment process was not sufficient to establish that the plaintiffs were entitled to $500,000 in punitive damages as a matter of law. Therefore, the trial court should have denied summary judgment in regard to the amount requested, and should have held a hearing to determine what amount was appropriate. A hearing would have supplied the necessary facts and information for the trial court to award punitive damages while taking into account various factors insuring the constitutionality of the award and also insuring it comported with Ohio's punitive damage statute.

{¶ 29} Our decision regarding this assignment of error should not, in any way, be taken as an indication that $250,000 is or is not the proper amount of punitive damages to award. Instead, once evidence is received, the trial court may determine that $250,000 is too high, too low, or is the correct award of damages. However, we simply cannot determine the validity of the amount awarded without the trial court first sufficiently weighing and balancing competing factors to reach a reasonable punitive damage award that fulfills the law. As such, McGuire's second assignment of error is sustained insofar as the trial court erred in awarding punitive damages without first considering the necessary evidence to evaluate whether the award comports with applicable law.

{¶ 30} Assignment of Error No. 3:

{¶ 31} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT GRANTED RELIEF TO APPELLEES THAT HAD NOT BEEN SOUGHT BY THEM IN THEIR COMPLAINT OR IN THEIR MOTION FOR SUMMARY JUDGMENT.

{¶ 32} McGuire argues in his third assignment of error that the trial court erred by

ordering his 15 percent interest in the trusts forfeited.

**{¶ 33}** Near the end of the summary judgment hearing, Nordloh and Sheley's counsel indicated to the court that its proposed entry also included forfeiture of McGuire's 15 percent residuary interest in the trusts. The magistrate responded, "I would agree with counsel that the right to own 15 percent interest is not appropriate, not under these circumstances. You shouldn't benefit."

**{¶ 34}** McGuire argues that the trial court erred in ordering the forfeiture because such award was not requested in the plaintiffs' pleading or motion for summary judgment. However, the amended complaint specifically included Nordloh and Sheley's request for "all other damages to which Plaintiffs, individually, collectively, jointly or in any other manner, or all the beneficiaries of the Trusts are entitled in the matter." While this language did not specifically request a dollar amount connected to forfeiture of McGuire's residuary interest, Civ.R. 8(A) requires only a demand for judgment rather than an exact dollar figure.[1]

**{¶ 35}** While the 15 percent interest was clearly made part of the suit, the trial court's order is nonetheless improper because the court did not reference or reveal any reasoning as to why the forfeiture was ordered or how it related to the damages already ordered.

**{¶ 36}** There are several different ways to interpret the trial court's order that McGuire's 15 percent interest should be forfeited. The court's order could be interpreted to mean that the award of compensatory damages, attorney fees, and punitive damages would essentially be increased by the amount equal to McGuire's 15 percent interest. If so, we

---

1. Moreover, McGuire clearly knew that the forfeiture of his residuary interest was a possibility, as the record contains reference to McGuire's own suggestion that he forfeit his 15 percent interest. During discovery, McGuire's attorney sent plaintiffs' attorney a letter, which was later attached to an affidavit filed with the court. In the letter, McGuire demonstrated a willingness to "assign, waive, disclaim, or relinquish by way of restitution to the other remaindermen" his 15 percent residuary interest in the trusts. Furthermore, when the 15 percent interest issue was raised at the summary judgment hearing, McGuire did not object or indicate in any way that he was surprised by plaintiffs' request.

have nothing in the record as to the present or future value the court assigned to the 15 percent residuary interest. Depending on the assets remaining in the estate, the forfeiture of the 15 percent interest would essentially tack on an additional award of damages to the court's order.

{¶ 37} Or, the court could have intended that the forfeiture serve as a payment toward the award of compensatory damages, attorney fees, and punitive damages. In this alternative, the amount of damages would not increase, but rather, remain the same and be paid down by the forfeiture of McGuire's interest.

{¶ 38} Alternatively, the court could have simply been trying to recognize that equity did not permit McGuire to profit on his interest in the trust, so that the 15 percent interest he had should be absorbed back into the trust, with no regard to and no impact on the damages already awarded.

{¶ 39} The trial court's intention is not reviewable because its entry only states that McGuire must forfeit his 15 percent and that he is no longer entitled to any residuary of either trust upon the death of the life beneficiary. Compounding our attempt to gain insight as to the trial court's thinking is the fact that this issue was not included in the motion for summary judgment, nor was the hearing focused upon forfeiture of the 15 percent residuary interest. We therefore sustain McGuire's third assignment of error, in so much as the trial court's order of forfeiture requires a rationale supported by law.

{¶ 40} In conclusion, the matters regarding the trial court's determination as to the amount of punitive damages and the forfeiture of McGuire's 15 percent residuary interest require fact finding that is beyond the scope of summary judgment, as well as a rationale supporting the trial court's decisions so that this court can perform a meaningful review. As such, the trial court erred in determining the amount of punitive damages and in ordering forfeiture of McGuire's residuary interest without sufficient evidence necessary for supporting

its analysis and rationale. We therefore reverse the award of punitive damages and forfeiture of McGuire's residuary interest, and this cause is remanded to the trial court for a hearing on damages.[2]

**{¶ 41}** Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

S. POWELL and M. POWELL, JJ., concur.

---

2. The reversal of the trial court's damage award in no way impacts the trial court's determination that summary judgment was properly granted in regard to McGuire's fraud and breach of fiduciary duties, as those issues were never before this court on appeal.