[Cite as *Reed v. Triton Servs., Inc.*, 2019-Ohio-1587.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

GRADY D. REED, II,                                              :

    Appellee,                                               :                  CASE NO. CA2018-07-049

                                                            :                  O P I N I O N
  - vs -                                                                            4/29/2019

                                                            :

TRITON SERVICES, INC., et al.,                                 :

    Appellants.                                             :

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2010-CVH-2293

Christopher S. Cushman, 1019 Main Street, Milford, Ohio 45150, for appellee

Scott R. Thomas, 250 Grandview Drive, Suite 500, Ft. Mitchell, KY 41017, for appellants

**RINGLAND, J.**

{¶ 1}   Appellants, Triton Services, Inc. ("Triton"), and Majid Samarghandi, Hamid Samarghandi, Richard Schock and Robert Stint ("Shareholders") appeal a verdict granted in favor of appellee, Grady Reed.  For the reasons detailed below, we affirm.

{¶ 2}   The parties have previously been before this court where we noted that the dispute centers around a "lengthy, convoluted set of facts" involving a dispute between Reed, Triton, and the Shareholders regarding the ownership of ten shares of Triton stock.  *Triton*

*Servs., Inc. v. Reed* ("*Reed II*"), 12th Dist. Warren Nos. CA2016-04-028 and CA2016-08-068, 2016-Ohio-7838, ¶ 2; *Reed v. Triton Servs., Inc.* ("*Reed I*"), 12th Dist. Clermont Nos. CA2013-07-055 and CA2013-07-060, 2014-Ohio-3185.

{¶ 3} Reed and the Shareholders own shares of Triton. Each of them signed and were subject to Triton's Stockholders' Agreement ("Agreement"). Paragraph 5 of the Agreement is titled "Required Sales and Purchases of Stock Owned by Stockholders." Pursuant to that provision, the parties agreed that each stockholder shall sell all of his stock in Triton upon termination of his employment for any reason. In such an instance, Triton is first given the option to purchase the stock. If Triton does not exercise that option, the stockholders are required to purchase the stock within 120 days, proportional to the current stock ownership between the nonselling stockholders. Paragraph 6 of the Agreement then sets forth the formula by which the purchase price of the stocks is to be determined.

{¶ 4} Reed claims that he owns ten shares of Triton, while Triton and the Shareholders claim he owns only five. That conflict stems from a prior agreement between Reed and Triton wherein Triton agreed to purchase five of his shares. Reed alleges that Triton agreed to purchase five shares, and had advanced him $90,000, but they had not yet settled on a final purchase price. To the contrary, Triton argues they had agreed on the final purchase price, but Reed rejected the final payment of $24,026.09 for the shares.

{¶ 5} Reed submitted a notice of termination of employment to Triton effective December 18, 2009. Following his resignation, Reed continued work for Triton as an independent contractor. Triton terminated its relationship with Reed entirely in April 2010. Reed asserts that the stock repurchase provision of the Agreement was triggered upon his resignation, and that the Shareholders have breached the Agreement by failing to purchase his shares.

{¶ 6} Following a bench trial, Reed moved for a directed verdict on shares 6-10, or

the shares which were not subject to the prior agreement between Reed and Triton. The Shareholders moved for a directed verdict as to all of the shares, separately moving for a directed verdict on shares 1-5 which they alleged had previously been sold to Triton in 2009. The trial court overruled the Shareholders' motions and granted a directed verdict in favor of Reed on all 10 shares. The $90,000 Triton advanced toward shares 1-5 was applied against the judgment.

{¶ 7} This matter was appealed to this court where we reversed and remanded the trial court's decision finding that Reed was entitled to $581,470 in money damages. *Reed I*, 2014-Ohio-3185 at ¶ 23. In so doing, this court found that the only remedy available was one for specific performance. *Id.* As a result, we found the trial court erred in treating the action as one for money damages rather than specific performance, which had prevented the Shareholders the opportunity to present certain equitable defenses. *Id.*

{¶ 8} After we issued our opinion in *Reed I*, Triton filed a motion with the trial court seeking leave to amend its answer to include a counterclaim against Reed for breach of contract, promissory estoppel, and unjust enrichment, among others, including a request for declaratory judgment, all relating to Reed's alleged ownership of ten shares of Triton stock. The trial court denied the motion to amend as untimely and found the "proposed amendments are basic affirmative defenses in any contract action, be the claim legal or equitable." Concluding, the trial court also stated that it "can only conclude that failing to raise them initially was a clear legal strategy of the Defendants."

{¶ 9} Thereafter, Triton and the Shareholders sought a writ of prohibition from this court seeking to enjoin the trial court from conducting a trial in the underlying case without first granting them leave to amend their answer, vacating the entry that denied their jury

- 3 -

demand, and granting them a jury trial on all issues so triable.[1]  This court granted the trial court's motion to dismiss the complaint and the Ohio Supreme Court affirmed.  *State ex rel. Samarghandi v. Ferenc*, 149 Ohio St.3d 698, 2017-Ohio-1413, ¶ 11.

{¶ 10}  This matter was retried before the bench in April 2018.  Following the close of evidence, the trial court found that Reed was entitled to specific performance pursuant to the rights guaranteed him by the Agreement.  Since Reed was compelled to sell all of his stock upon his termination, pursuant to Paragraph 5, the Shareholders were compelled to purchase his ten shares.  The trial court also found that Paragraph 6 set forth the applicable formula for determining the price per share.  Both the Shareholders and Triton now appeal.

{¶ 11}  The Shareholders and Triton have filed separate briefs, both raising multiple assignments of error that address various aspects of the case, including party identities, pretrial procedure, and the trial court's final judgment.  For ease of discussion, we will address the assignments of error out of order.

{¶ 12}  Triton's Assignment of Error No. 1:

{¶ 13}  THE TRIAL COURT ERRED BY SURPRISING TRITON SERVICES ON THE OPENING OF TRIAL THAT IT WAS A "PARTY"  DESPITE THE TRIAL COURT'S DENIAL OF ITS MOTION FOR LEAVE TO AMEND ITS ANSWER AND THE ABSENCE OF ANY CLAIM BY MR. REED AGAINST TRITON SERVICES.

{¶ 14}  In its first assignment of error, Triton argues the trial court erred by finding it was a party to the litigation.  By way of background, shortly before retrial, Triton argued that it was not a party to this litigation because there were no claims "for or against Triton."  The trial court denied Triton's claim.  Triton claims it was "surprised" by this revelation despite

---

1. Triton also sought to file a complaint in the Warren County Court of Common Pleas.  However, the trial court in that case dismissed the complaint based on the jurisdictional-priority rule, and this court affirmed the dismissal.  *Reed II*, 2016-Ohio-7838 at ¶ 13.

having been involved in this litigation for years. Triton also argues that it should have been permitted a one-day continuance on the first day of trial.

{¶ 15} However, Triton's claim is plainly incorrect following a review of the record. In this case, Triton was named a party in this action and has participated as a party throughout the pendency of this matter. As this court noted in *Reed I*, Triton clearly has an interest in this litigation as to whether it owns the disputed 1-5 shares. *Reed I*, 2014-Ohio-3185 at ¶ 3. In fact, in a prior filing, Triton has taken the opposite position and specifically argued that it *is* a party to this action. As a result of the foregoing, we find the trial court did not err by finding that Triton was still a party in the litigation.

{¶ 16} Triton also argues that the trial court erred by not permitting a one-day continuance requested on the day of trial. The decision to grant or deny a continuance is within the sound discretion of the trial court. *Nordloh v. McGuire*, 12th Dist. Butler No. CA2015-02-023, 2015-Ohio-4529, ¶ 11. The trial court's decision regarding a request for continuance will not be reversed absent an abuse of discretion. *Id.*

{¶ 17} In ruling upon a motion for a continuance, "the trial court balances the court's interest in controlling its docket and the public's interest in an efficient judicial system with the possibility of prejudice to the defendant." *U.S. Bank v. Fitzgerrel*, 12th Dist. Clermont No. CA2011-09-063, 2012-Ohio-4522, ¶ 18. The trial court may consider factors such as the length of the delay requested, prior requests for continuances, the inconvenience to the parties, witnesses, counsel, and the court, whether the movant contributed to the circumstances giving rise to the request for a continuance, and other relevant factors depending on the facts of the case. *Id.*

{¶ 18} The trial court did not err by denying Triton's motion for a continuance. Despite Triton's arguments, it should not have been "surprised" that it was a party to this litigation. By the time Triton requested its continuance, all parties were present for the first day of trial and

the matter proceeded appropriately. The trial court did not abuse its discretion when it denied Triton's motion for a continuance. Triton's first assignment of error is overruled.

{¶ 19} Shareholders' Assignment of Error No. 1:

{¶ 20} THE TRIAL COURT ERRED IN DENYING THE SHAREHOLDERS' MOTION TO TRANSFER THE CASE ON REMAND.

{¶ 21} In their first assignment of error, the Shareholders allege the trial court erred by failing to "transfer" this action to another Clermont County Common Pleas Judge.[2] The Shareholders argue that the trial court should have recused itself due to allegations of bias and prejudice. This court, however, has no authority to render a decision with regard to disqualification or to void a trial court's judgment on the basis of personal bias or prejudice on the part of the trial judge. *Ricker v. Parknavy*, 12th Dist. Madison No. CA2003-12-039, 2004-Ohio-5822, ¶ 15; *Beer v. Griffith*, 54 Ohio St.2d 440, 441-442 (1978). The Chief Justice of the Ohio Supreme Court, or appropriate designee, has exclusive jurisdiction to determine a claim that a common pleas court judge is biased or prejudiced. *Beer* at 441-442. As a result, the Shareholders' first assignment of error is overruled.

{¶ 22} Shareholders' Assignment of Error No. 2:

{¶ 23} THE TRIAL COURT ERRED IN DENYING THE SHAREHOLDERS' MOTION FOR LEAVE TO AMEND THEIR ANSWER.

{¶ 24} In their second assignment of error, the Shareholders argue the trial court erred by denying their motion for leave to amend their answer. The Shareholders argument is without merit.

{¶ 25} Pursuant to Civ. R. 15(A):

> A party may amend its pleading once as a matter of course
> within twenty-eight days after serving it or, if the pleading is one

---

2. The Shareholders attempt to frame this issue as a "motion to transfer." The reality is that their arguments are grounded in allegations of bias and prejudice and therefore a disqualification analysis is appropriate.

to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires.

{¶ 26} The grant or denial of leave to amend a pleading is discretionary and will not be reversed on appeal absent a showing that the trial court abused its discretion. *Hacker v. House*, 12th Dist. Butler No. CA2014-11-230, 2015-Ohio-4741, ¶ 38. In order to find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Richards v. Newberry*, 12th Dist. Clermont No. CA2014-08-061, 2015-Ohio-1932, ¶ 15.

{¶ 27} Prior to retrial, the Shareholders sought to amend their original answer in several different respects. Specifically, they sought: (1) to remove an admission that "the Shareholders Agreement is a legal document which speaks for itself and requires no further response from Defendants," (2) to change the wording of paragraphs 19 through 41 to reflect that Reed dismissed his civil conspiracy claim, (3) to change the wording of paragraph 42 through 48 to reflect the trial court's dismissal of Reed's defamation claim on summary judgment, (4) to renumber, drop, and add various affirmative defenses.

{¶ 28} The trial court denied the Shareholders' request in a written decision, noting the more than four-year delay constituted an undue delay, but also finding that the "proposed amendments are basic affirmative defenses in any contract action, be the claim legal or equitable. This court can only conclude that failing to raise them initially was a clear legal strategy of [the Shareholders]."

{¶ 29} Following review, we find the trial court did not err by denying the Shareholders motion for leave to amend their answer. The trial court appropriately found that the more than four-year delay in seeking leave to amend their answer constituted an undue delay. In

addition, we concur with the trial court that the information the Shareholders sought to include in their amended answer was either information that was well within the knowledge of the trial court or basic defenses to a contract action. The trial court did not abuse its discretion and the Shareholders' second assignment of error is overruled.

{¶ 30} Triton's Assignment of Error No. 2:

{¶ 31} THE TRIAL COURT ERRED BY DENYING TRITON'S MOTION FOR LEAVE TO FILE A COUNTERCLAIM.

{¶ 32} In its second assignment of error, Triton argues the trial court erred by denying its motion for leave to file a counterclaim. Civ.R. 13(F) provides that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." Whether or not a party may, under appropriate circumstances, amend a responsive pleading to include a counterclaim is a decision left to the sound discretion of the trial court, and a trial court's decision will not be disturbed absent an abuse of discretion. *BAC Home Loans Servicing, LP v. Mullins*, 12th Dist. Preble No. CA2013-12-015, 2014-Ohio-4761, ¶ 16.

{¶ 33} We find no abuse of discretion by the trial court in denying Triton's motion for leave to file a counterclaim. Initially, we note that Triton argues the trial court erred by finding that its counterclaim was compulsory. Pursuant to Civ. R. 13(A), a counterclaim is compulsory, in pertinent part, if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Despite Triton's argument on appeal, Triton conceded this issue before the trial court when it argued that "Triton's [c]ounterclaim [sic] arises from its transactions with Reed in 2009 regarding Triton's purchase of Reed's Triton stock. These transactions featured prominently in the first trial and * * * will require no additional discovery or cause any delay." There is no evidence or reasonable argument to rebut the compulsory nature of the counterclaim.

- 8 -

{¶ 34} Furthermore, Triton failed to explain how its omission was the result of oversight, inadvertence, or excusable neglect. As correctly noted by the trial court, Triton provides no factual explanation to suggest that justice now requires such a counterclaim more than four years after the commencement of the litigation. Accordingly, we conclude the trial court did not abuse its discretion in denying Triton's motion for leave to file a counterclaim. Triton's second assignment of error is overruled.

{¶ 35} Shareholders' Assignment of Error No. 3:

{¶ 36} THE TRIAL COURT ERRED IN DENYING THE SHAREHOLDERS' RIGHT TO TRIAL BY JURY.

{¶ 37} Triton's Assignment of Error No. 3:

{¶ 38} THE TRIAL COURT ERRED IN DENYING TRITON A JURY TRIAL ON ITS ORAL CONTRACT TO SELL SHARE 1 AND ITS ORAL CONTRACT TO SELL SHARES 2-5 TO MR. REED.

{¶ 39} Both Triton and the Shareholders allege the trial court erred by denying their jury demand. We disagree.

{¶ 40} This court has previously held that "[w]hen the relief sought is equitable, R.C. 2311.04 confers no right to a jury trial." *First Natl. Bank v. Miami Univ.*, 121 Ohio App.3d 170, 180 (12th Dist.1997). In this case, we specifically found in *Triton I* that "Reed's claim was actually one for specific performance" and therefore the only remedy is "in equity alone." *Reed I*, 2014-Ohio-3185 at ¶ 23.

{¶ 41} The Shareholders attempt to distinguish the relevant case law by arguing that their legal defenses should be tried to a jury, including claims that Reed is barred by the doctrines of equitable estoppel and waiver. However, as this court has previously stated, "the right to a jury trial depends upon the action's primary and predominant objective." *First Natl. Bank* at ¶ 180. Again, as this court has already determined, this action sounds in

equity. *Reed I* at ¶ 23. Though the Shareholders had affirmative defenses to Reed's claim, those defenses did not alter the primary or predominant objective of the case. The same is true for Triton as the primary and predominate objective of the litigation involved an equitable claim, notwithstanding the disputed number of shares.

{¶ 42} Moreover, the trial court also found that "the Court cannot reasonably bifurcate the equitable claim of Reed and the 12 affirmative defenses of the Defendants that would be asserted at a Court trial and then proceed to a jury trial only on the two affirmative defenses at issue here." The trial court appropriately found that the Shareholders request would "clearly confuse the jury," "be unduly burdensome on the Court," and "require repetitive testimony and evidence" that do not serve the interests of judicial economy. For those reasons, we find the trial court did not err by denying the Shareholders' jury demand. Both the Shareholders' and Triton's third assignments of error are overruled.

{¶ 43} Shareholders' Assignment of Error No. 4:

{¶ 44} THE TRIAL COURT ERRED IN IGNORING THE SHAREHOLDERS' LEGAL DEFENSES TO REED'S CONTRACT CLAIM.

{¶ 45} Shareholders' Assignment of Error No. 5:

{¶ 46} THE TRIAL COURT ERRED IN GRANTING SPECIFIC PERFORMANCE TO MR. REED.

{¶ 47} Triton's Assignment of Error No. 4:

{¶ 48} THE TRIAL COURT ERRED IN CONCLUDING THAT REED HAD NOT SOLD FIVE SHARES TO TRITON IN 2009.

{¶ 49} In their fourth and fifth assignments of error, the Shareholders argue the trial court's judgment on the merits was erroneous. In addition, Triton, in its fourth assignment of error, argues the trial court erred by concluding that Reed did not sell five of his shares. We disagree.

{¶ 50} Both the Shareholders and Triton raise a litany of arguments with respect to the trial court's final judgment. The Shareholders argue the trial court "ignored" their evidence and defenses, focused through "improper lenses," and misapplied the law. Triton similarly argues that the trial court "ignored" its evidence or reached erroneous conclusions in finding that Reed had ten shares and had not completed the sale of the initial five shares. We will review the trial court's decision under the appropriate manifest weight of the evidence standard.

{¶ 51} A manifest weight challenge in a civil case concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. In a manifest weight analysis, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *Ohio Bar Liab. Ins. Co. v. CCF Dev., L.L.C.*, 12th Dist. Butler Nos. CA2017-12-170 and CA2017-12-175, 2018-Ohio-3988, ¶ 31.

{¶ 52} This is a contractual dispute involving the ownership of Triton stock and the applicability of certain provisions contained in the Agreement, specifically Paragraph 6, which provides a formula for the valuation of a share of Triton stock. In its most basic form, "[a] contract is generally defined as a promise, or a set of promises, actionable upon breach." *Artisan Mechanical, Inc. v. Beiser*, 12th Dist. Butler No. CA2010-02-039, 2010-Ohio-5427, ¶ 26. The essential elements of a contract include "an offer, an acceptance, a meeting of the minds, an exchange of consideration, and certainty as to the essential terms of the contract." *Turner v. Langenbrunner*, 12th Dist. Warren No. CA2003-10-099, 2004-Ohio-2814, ¶ 13.

{¶ 53} The parties do not dispute that Reed owned ten shares of Triton stock on August 15, 2007. However, Triton argues that Reed sold Triton five shares prior to his termination. Therefore, the issue is whether Reed has five shares or ten shares for purposes of determining the rights he can enforce. Following review, we conclude that Triton failed to show that it had a valid contract containing the essential terms and therefore the trial court appropriately found that Reed has ten shares.

{¶ 54} "A valid contract must be specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, the consideration to be exchanged, and the price to be paid." *Holloway v. Moritz*, 12th Dist. Fayette No. CA2018-04-005, 2019-Ohio-83, ¶ 17.

{¶ 55} In the present case, the evidence shows that Reed offered to sell five shares to Triton through negotiations he had with Majid, Triton's majority shareholder. The primary witnesses regarding the negotiations were Reed and Majid.[3]

{¶ 56} During his testimony, Reed acknowledged that he wanted to sell his five Triton shares and the impetus for the sale was based on his financial difficulties. However, he explained that they had not yet agreed on the final value of the shares and testified about the back and forth communications that had occurred in the months prior to his termination. Reed explained that Triton, through Majid, had advanced him $90,000 to help him through financial difficulties while the parties continued to negotiate the final purchase price for the transaction.

{¶ 57} Triton maintains that the parties had a final agreement whereby Reed agreed to sell his five shares for the amount of $114,026.09 and Reed simply failed to accept final

---

3. The trial court correctly noted in its decision that the "acrimony between the two is palpable." Both parties accuse the other of lying and maintain that "the other's credibility is so impugned by their lies that the Court should disregard their testimony."

- 12 -

payment for the shares.

**{¶ 58}** Despite its arguments to the contrary, Triton fails to show that the parties reached a final agreement as to the value of the shares. In this case, Majid did not testify that he and Reed had agreed on a final purchase price for shares 1-5. While the evidence shows that the two may have agreed to use Triton's financial records for purposes of determining share value, neither Reed nor Majid testified that they had agreed to a final specific formula to determine pricing. During trial, Triton placed emphasis on a series of memoranda drafted by Triton's Chief Financial Officer and sent to Reed. However, a review of those memoranda show that the CFO's calculations of Reed's per share price was simply a reflection of *his understanding* of the company's share value. The memoranda do not reflect any *agreement* between the parties. As a result, the trial court concluded that there was no "meeting of the minds" and Reed was entitled to specific performance for all ten shares.

**{¶ 59}** Following a thorough review of the record, we find the trial court's decision was supported by the manifest weight of the evidence. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Brackett v. Moler Raceway Park*, 12th Dist. Brown No. CA2012-06-009, 2013-Ohio-1102, ¶ 22. Here, the trial court concluded that the parties had not yet agreed to a final purchase price for the shares and we agree that the documentary evidence provided by Triton does not support its claims to the contrary. As a result, the trial court did not err by finding that Reed had ten shares of Triton stock.

Applicability of Paragraph 6

**{¶ 60}** The trial court found that Paragraph 6 of the Agreement applied, which specified a formula for determining the value of each share. Using this formula, the trial court found that the per value share of Reed's stock was $67,147. The Shareholders strenuously

object to this finding and argue that Paragraph 6 of the Agreement "was to be applicable only in a sale of shares to a third party." They further argue that they committed a unilateral mistake regarding the scope of Paragraph 6 and are entitled to a rescission of the Agreement.

{¶ 61} The Agreement was admitted in evidence. The Agreement's preamble identifies the contracting parties. The first clause references Triton's "shares of common stock" and sets forth the number of shares each party owned on February 2003. The second clause states "[t]he Stockholders wish to impose certain restrictions and obligations on themselves and on the shares of Stock in order to provide for the continuity of the Corporation's practice and management and to promote a harmonious relationship among the Stockholders." The Agreement then sets forth several provisions "in consideration of the mutual promises and covenants contained herein, the parties agree as follows * * *." As relevant here, Paragraph 6 states:

> 6. **Purchase Price**
> Except as provided in Paragraph 6 (b), the Purchase Price (as defined herein), payable to a Selling Stockholder pursuant to this Paragraph shall be provided herein. The Purchase Price shall be determined by adding the Earnings Value to the Book Value, and dividing the sum by the number of shares outstanding as of the date on which the event triggering the sale of Stock (e.g. termination of employment, death, etc.,) occurs (the "Trigger Date").

The parties do not dispute that Paragraph 6(b) referenced therein is inapplicable in this case. However, in pertinent part, Paragraph 6(c) provides "except as otherwise agreed by the Selling Stockholder and the purchaser, the closing of the purchase and sale of the Stock will take place * * * within one hundred twenty (120) days after the Trigger Date, or such other date as agreed to by the parties."

{¶ 62} The Shareholders' argument on appeal is a conflation of several different issues and defenses. On one hand, the Shareholders maintain that the Agreement was

unambiguous. However, the Shareholders then argue that the unambiguous Agreement is not relevant to their claim. In doing so, the Shareholders argue that Paragraph 6 should not determine share value due to the "law of mistake." Therefore, despite the language contained in the Agreement, the Shareholders argue that Paragraph 6, either: (1) only applied to the sale of shares to third parties, or (2) does not reflect their understanding of what the Agreement meant.

{¶ 63} A meeting of the minds occurs where "a reasonable person would find that the parties manifested a present intention to be bound to an agreement." *Connor & Murphy, Ltd. v. Applewood Village Homeowners' Assn.*, 12th Dist. Butler No. CA2007-09-213, 2009-Ohio-1447, ¶ 52. "Parties to contracts are presumed to have read and understood them and * * * a signatory is bound by a contract that he or she willingly signed." *Preferred Capital, Inc. v. Power Engineering Group, Inc.*, 112 Ohio St.3d 429, 2007-Ohio-257, ¶ 10.

{¶ 64} It is well-established that the doctrine of mutual mistake may permit rescission of a contract when the agreement is based on a mutual mistake of law or fact. *State ex rel. Walker v. Lancaster City School Dist. Bd. of Edn.*, 79 Ohio St. 3d 216, 220 (1997). A mutual mistake is one made by both parties at the time the contract is entered into, "which has a material effect on the agreed exchange of performances." *Reilley v. Richards*, 69 Ohio St.3d 352, 353 (1994). In such a case, the presence of a mutual mistake "'calls into question the very existence of the contract.'" *Motorists Mut. Ins. Co. v. Columbus Fin., Inc.*, 168 Ohio App.3d 691, 2006-Ohio-5090, 9 (10th Dist.)

{¶ 65} In contrast, a unilateral mistake occurs when "one party recognizes the true effect of an agreement while the other does not." *425 Beecher, L.L.C. v. Unizan Bank*, 186 Ohio App.3d 214, 2010-Ohio-412, ¶ 22 (10th Dist.). Generally, relief from a unilateral mistake of a material fact will be denied where the mistake is the result of a party's own negligence. *Smith v. Littrell*, 12th Dist. Preble No. CA2001-02-004, 2001-Ohio-8642.

**{¶ 66}** In this case, the Shareholders testified as to their understanding of Paragraph 6. One shareholder, Stindt, stated that "it was explained to him" that the formula was applicable in the event of an outside buyer purchasing Triton stock, but conceded that he relied on the majority shareholder's explanation of the Agreement and did not have his own counsel review the Agreement. Two other shareholders, Schock and Hamid, testified similarly that they understood the formula in Paragraph 6 only applied in the event an outside buyer wanted to purchase Triton stock. The majority shareholder, Majid, also explained that the formula was "understood by all" to apply only if an outside buyer was offering to buy Triton stock.

**{¶ 67}** The trial court found the assertions made by Stindt, Schock, Hamid, and Majid were not credible, particularly in light of the other provisions of the Agreement. For instance, the trial court found that Paragraph 3 of the Agreement specifically references the sale of Triton stock to third parties, which imposes substantial obligations and rights on the non-selling stockholders. However, Paragraph 3 makes no reference to any provision that the sale of shares to a third party must be made in accordance with Paragraph 6. Likewise, Paragraph 6 does not make any reference to third parties in reference to the formula used when a shareholder sells his stock. In conclusion, the trial court found that "a manifest absurdity does not result if the Court construes the Agreement as written." Rather, an absurdity would result if the Court construed the Agreement as the Shareholders claim is should.

> In that event, a terminating Stockholder is compelled to sell all of his Stock to either the Corporation or the remaining Stockholders. However, the Selling Stockholder would have no contractually defined method to calculate the per share value for a purchase price. He would simply be subject to the whims of the Corporation or the remaining majority Stockholders. Further, if paragraph 6 is inapplicable, there would be no closing date and no payment requirements. Such a construction also flies in the face of the express intent of the Agreement "to promote a

harmonious relationship among the shareholders."

The Court cannot find from the face of the Agreement or the overall content of the Agreement that some other meaning, i.e. the Individual Defendants' position, is clearly evidenced. Not only would a Selling Stockholder be left with no protections, paragraph 3 would be eviscerated and rendered meaningless as well. Yet another absurd result.

Therefore, the Court finds that the Individual Defendants have not proven to the Court by clear and convincing evidence that they made a unilateral mistake by not specifically using clear language to unambiguously limit the use of the formula in paragraph 6 to stock sales to outside parties only.

{¶ 68} Following review, we find the trial court's decision was support by the manifest weight of the evidence. Again, the issue raised by the Shareholders is a factual determination where the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Brackett*, 2013-Ohio-1102 at ¶ 22. The trial court found the position advanced by the Shareholders lacked credibility, especially in light of the entire written Agreement. Contrary to the Shareholders' argument on appeal, the trial court did not "ignore" their evidence or focus through "improper lenses." Rather, the trial court weighed the evidence submitted and rendered judgment accordingly. Based on these facts, we concur with the judgment of the trial court and find its judgment is not against the manifest weight of the evidence.

{¶ 69} Finally, the Shareholders allege that the parties modified the Agreement by the parties' conduct when the formula in Paragraph 6 was not used to determine share value when another employee left Triton in 2005. As a result, the Shareholders argue that Reed is "equitably estopped" from arguing that the Agreement "was not modified because he benefitted by ignoring the 'formula'" when it suited him in a prior transaction.

{¶ 70} The trial court found the Shareholders' claim to be without merit. The trial court noted that the Shareholders' argument simply referred to testimony regarding the "precedent

on a previous sale." However, that sale was authorized under the terms of the Agreement and all of the Shareholders benefitted from that transaction. To the extent that an individual in a prior transaction did not seek to enforce the Agreement was a matter of that individual's own volition and the limited evidence offered with respect to that choice does not show that the parties modified the Agreement based on that incident. We concur with the trial court's judgment and find the parties did not "modify" the Agreement through their conduct, nor was Reed equitably estopped from enforcing his rights under the Agreement.

Specific Performance

{¶ 71} Finally, although many of the issues raised by the parties overlap, or at least are briefed in a manner to cause substantial overlap, the Shareholders argue in their fifth assignment of error that the trial court erred by granting specific performance to Reed.

{¶ 72} As we noted in *Reed I*, the Agreement provides that specific performance is the only means of remedy in the event of a breach. *Reed I*, 2014-Ohio-3185 at ¶ 23. Paragraph 11 of the Agreement provides as follows:

> **11. Equitable Remedies.**
>
> The parties hereto declare that it is impossible to measure in money the damages which accrue to a party hereto or to the estate or personal representative of a decedent, by reason of a failure to perform any of the obligations of this Agreement. Therefore, if any party hereto or the personal representative of a decedent shall institute any action or proceeding to enforce the provisions hereof, any other party against whom such action or proceeding is brought shall have no right to make the claim or defense therein, that such party or such personal representative has an adequate remedy at law. The parties further agree that the shares of Stock are unique chattels and that the equitable remedy of specific performance shall be available to enforce the terms of this Agreement.

{¶ 73} The Shareholders argue the trial court should not have granted specific performance to Reed because the Agreement was unconscionable, and Reed had "unclean hands." The Shareholders also reargue several positions contained in their other

- 18 -

assignments of error, i.e., that the trial court erred in its mistake analysis and applied the wrong legal standard.

{¶ 74} Unconscionability is a ground for revocation of a contract, and is generally recognized to include both an absence of meaningful choice on the part of one of the parties to the contract, combined with contract terms that are unreasonably favorable to the other party. *Roe v. Rent-A-Center, Inc.*, 12th Dist. Butler No. CA2007-09-224, 2008-Ohio-4307, ¶ 5. The party asserting that an arbitration agreement is unconscionable must show that the agreement is both procedurally and substantively unconscionable. *Id.*

{¶ 75} Procedural unconscionability includes the bargaining position of the parties and involves factors such as age, intelligence, education, business experience, bargaining power, who drafted the document, whether the terms were explained to the weaker party, whether alterations were possible, and whether there were alternative sources of supply. *Rinderle v. Whispering Pines Health Care Ctr.*, 12th Dist. Fayette No. CA2007-12-041, 2008-Ohio-4168, ¶ 16.

{¶ 76} The trial court found the Shareholders failed to prove procedural unconscionability and therefore did not establish the defense of unconscionability.[4] Following review, we concur with the trial court. As appropriately found by the trial court, there was no evidence that any of the Shareholders were compelled to sign the Agreement. There was no evidence that any of the Shareholders were unable to understand the meaning of the Agreement based on their age, education, intelligence, business acumen, or experience. Based on the totality of the circumstances, the trial court found that the Shareholders failed to prove procedural unconscionability. On appeal, the Shareholders offer no compelling arguments to rebut this finding and therefore we agree with the trial court that the

---

4. Nevertheless, the trial court dismissed the Shareholders' assertions that the Agreement was "impractical, unfair, works a hardship on them, and is not perfectly fair."

Shareholders failed to prove unconscionability.

{¶ 77} The Shareholders also argue that Reed had "unclean hands" by alleging that the "rotten core of this dispute" is Reed's "scheme to sell his shares to deceive his former spouse, mislead a different judge, and cheat his children." The Shareholders continue to allege that Reed committed financial improprieties in his dealings with Triton and in the reporting of his income. However, as correctly found by the trial court, these allegations were primarily made by Majid and grounded in speculation and hearsay. The trial court found Reed's testimony to be credible and ruled in his favor. We will not reverse the trial court's decision based on the record and the fact that the trial court was in the best position to weigh the evidence.

{¶ 78} In conclusion, we find the trial court appropriately granting specific performance in favor of Reed utilizing the formula contained in Paragraph 6 to determine the price per share. The trial court's decision was supported by the manifest weight of the evidence. As a result, the Shareholders' fourth and fifth assignments of error, as well as Triton's fourth assignment of error, are overruled.

{¶ 79} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.